Dr. Joseph SONNEMAN, Appellant,

v.

Judy KNIGHT, Acting Commissioner,
Department of Labor, State of
Alaska, Appellee.

No. S–2809.

Supreme Court of Alaska.

March 2, 1990.

Rehearing Denied April 9, 1990.

Dr. Joseph A. Sonneman, pro se.

Kristen F. Bomengen, Asst. Atty. Gen., and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

### OPINION

COMPTON, Justice.

Joseph Sonneman voluntarily terminated his employment with the United States Postal Service to enter law school as a full time student. He timely filed claims for unemployment compensation, asserting that law school is vocational training, thereby entitling him to benefits.

Sonneman's claims were denied at all administrative levels. The superior court rejected Sonneman's administrative appeal. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Joseph Sonneman was employed between July 30, 1984 and July 30, 1986 by the United States Postal Service in Juneau as a letter carrier and distribution clerk. On July 30, 1986, Sonneman voluntarily terminated his employment. His stated reason for doing so was to attend law school at Georgetown University, Washington, D.C., as a full time student.[1]

The day after Sonneman terminated his employment he applied for unemployment compensation. He completed a Student Availability Questionnaire in which he stated that he would not accept employment conflicting with his class schedule, and that he would be taking a "full student load" as a first year law student. Sonneman acknowledged that he expected this schooling to result in a J.D. degree. After his arrival in Washington, D.C., he filed an interstate unemployment compensation claim against the State of Alaska.

On August 6 the Employment Security Division (ESD) of the Department of Labor (DOL) sent Sonneman three notices of determination denying him benefits. ESD reasoned that 1) Sonneman voluntarily had left suitable work for academic studies which was not good cause within the meaning of AS 23.20.379;[2] Sonneman was not able to or available for work during any week for which benefits were claimed because he was attending academic classes full-time within the meanings of AS 23.20.-378[3] and AS 23.20.382;[4] and 3) Sonneman was not ready, willing and able to accept any suitable work within the meaning of

1. Prior to admission to law school, Sonneman had earned B.S., M.A., and Ph.D. degrees.

2. AS 23.20.379 provides in part:
   (a) An insured worker is disqualified for waiting-week credit or benefits for the first week in which the insured worker is unemployed and for the next five weeks of unemployment following that week if the insured worker
   (1) left the insured worker's last suitable work voluntarily without good cause; ....

3. In part AS 23.20.378 provides:
   (a) An insured worker is entitled to receive waiting-week credit or benefits for a week of unemployment if for that week the insured worker is able to work and available for suitable work.
   ....
   (c) An insured worker is disqualified for waiting-week credit or benefits for a week of unemployment while the insured worker at-

tends an established school in a course of study providing academic instruction of 10 or more credit hours per week, or the equivalent. A disqualification under this subsection begins with the first week of academic instruction and ends with the week immediately before the first full week in which the insured worker is no longer attending classes if the insured worker certifies that the period of nonattendance will last at least 60 days. In this subsection, the term "school" includes primary schools, secondary schools, and institutions of higher education.

4. AS 23.20.382 provides:
   (a) Benefits or waiting-week credit for any week may not be denied an otherwise eligible individual because the individual is attending a vocational training or retraining course with the approval of the director of the employment security division or because, while attending the course, the individual is not

AS 23.20.378, offered while travelling to Washington, D.C.

The DOL hearing officer and Commissioner of Labor likewise rejected Sonneman's claim. He appealed the DOL's decision to the superior court. AS 22.10.020(d); AS 44.62.560; Appellate Rule 601. He alleged that the denial of benefits denied him equal protection and due process of law under the federal and state constitutions, and that law school was compensable "vocational training."[5]

The superior court affirmed. It reasoned that unemployment benefits were not a fundamental right nor did Sonneman's denial of benefits raise the spectre of a suspect classification. It thus applied the rational basis level of scrutiny to his federal equal protection claim and rejected it. Under the state's sliding scale equal protection analysis, the superior court also found the classifications in the statutes passed constitutional muster. Finally, relying on the definition of vocational training or retraining course in AS 23.20.520(23), it then reasoned that law school was not a vocational school.[6]

Sonneman appeals.

## II. DISCUSSION

### A. FEDERAL AND STATE EQUAL PROTECTION.

Constitutional questions are questions of law to which we apply our independent judgment. We adopt "the rule of law most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

State equal protection claims are analyzed under this court's flexible "sliding scale" test, as adopted in *State v. Erickson*, 574 P.2d 1, 12 (Alaska 1978). The "sliding scale" test has been refined into a three step analysis, articulated in *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264 (Alaska 1984):

First, it must be determined ... what weight should be afforded the constitutional interest impaired by the challenged enactment....

Second, an examination must be undertaken of the purposes served by a challenged statute....

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.

*Id.* at 269.

Sonneman contends that the right to receive unemployment compensation benefits is an inherent, fundamental right and that distinguishing between academic and vocational training is impermissible. He premises his argument on the "rewards of industry" clause in article I section 1 of the

available for work or refuses an offer of work.

(b) An otherwise eligible individual may not be denied benefits or waiting-week credit for any week because

(1) the individual is in training approved under 19 U.S.C. 2296(a)(1) (sec. 236(a)(1), Trade Act of 1974);

(2) the individual left work that was not suitable employment to enter the training; or

(3) while attending the training, the individual is not available for work, fails to seek work, or refuses work.

(c) In (b)(2) of this section, "suitable employment" means work that

(1) pays at least 80 percent of the individual's average weekly wage, as determined for the purpose of the Trade Act of 1974; and

(2) is at least equal in skill level to the individual's past adversely affected employment, as defined for purposes of the Trade Act of 1974.

5. Sonneman also alleged a cause of action under 42 U.S.C. § 1983. Sonneman's 42 U.S.C. § 1983 claim is meritless. *See Vest v. Schafer*, 757 P.2d 588 (Alaska 1988).

6. "Vocational training or retraining course" is *defined in AS 23.20.520(23) as follows:*

"[V]ocational training or retraining course" means a course of vocational or technical training or retraining in schools or classes, including but not limited to, field or laboratory work and related remedial or academic instruction, which is conducted as a program designed to prepare individuals for employment in trades, skills or crafts; the term "vocational training or retraining course" does not include a program of instruction for an individual, including a transfer credit program of instruction given at a community college, which is intended as a credit for a degree from an institution of higher education....

Alaska Constitution [7] and AS 23.20.010 and AS 23.20.350(d). This contention lacks merit.

It is doubtful that the legislature had the "rewards of industry" clause in mind when it enacted the Employment Security Act (Act). AS 23.20.005–.535. The Act was originally enacted in April 1955. Ch. 5, § 1, SLA 1955. The Constitutional Convention considered article I section 1 beginning in January 1956. 2 Proceedings of the Alaska Constitutional Convention (PACC) 1290–1294 (January 5, 1956). Moreover, other courts addressing the issue have accorded the interest in receiving unemployment benefits only minimal rational basis scrutiny. *Idaho Dep't. of Employment v. Smith,* 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324 (1977); *Chandler v. Department of Employment Sec.,* 678 P.2d 315 (Utah 1984); *Gluck v. Employment Security Dep't.,* 84 Wash.2d 316, 525 P.2d 768, 769 (1974).

█ Thus, the interest affected is entitled to review at the low end of the scale. As such the state need only show that the distinctions drawn bear a fair and substantial relationship to the Act's objective. *Brown,* 687 P.2d at 269–70. We conclude that such a relationship exists.

The intent underlying the Act is to "provide ... for the payment of compensation to individuals with respect to their unemployment." AS 23.20.005. This intent is limited however to "ameliorat[e] the negative effect that *involuntary* unemployment has on ... the ... individual...." *Estes v. Department of Labor,* 625 P.2d 293, 295 (Alaska 1981) (*quoting State, Dep't of Labor v. Boucher,* 581 P.2d 660, 662 (Alaska 1978)) (emphasis added). The state's argument that the distinction between vocational training and academic training is justified is as follows:

The exception that was established for vocational training programs was devised to extend training opportunities to otherwise unemployable individuals so that they might become employed after only a brief period of unemployment. The training program exception was intended to lessen the drain on the fund in cases in which workers who found themselves involuntarily unemployed were without the skills needed in the local job market. It was never intended to invite all insured workers to enhance their employability by leaving the full-time work force to acquire academic degrees.

In creating the training exception, the state was properly identifying a problem of fund depletion that could be caused by providing extended benefits to unemployed insured workers who are also "unemployable" because of limited skills. The statute provided the training exception so that a worker who entered an approved training program of limited duration could continue to receive benefits. Such an exception does not unreasonably deplete the fund and is intended to provide training for the purpose of immediate employability so that an insured worker may find employment more readily.[*] However, if such benefits were to be extended to all insured workers who elect to leave their employment and enroll in academic programs with the purpose of enhancing their employability, the fund could be rapidly depleted. Furthermore, it would soon cease to serve its original purpose and become another form of scholarship program.

[*] The letter of intent which was submitted by committee with HB 874, which amended the statute to grant discretion to the director of the employment security division to approve vocational training programs, stated that it was anticipated that most training programs would not exceed six months. 1976 House Journal, p. 805.

We agree with this justification. Vocational training is better designed to assist those who are unemployable than is aca-

7. Article I section 1 of the Alaska Constitution provides in part:

> Section 1. Inherent Rights. This constitution is dedicated to the principles that all persons have a natural right to life, liberty, ... the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

demic training, and assistance afforded by vocational training is less expensive than that which might be given by academic programs.

■ The distinction between vocational training and academic training serves to preserve the unemployment compensation fund for those most in need, the involuntarily unemployed. We conclude that this is a legitimate state purpose. Since Sonneman voluntarily terminated his employment to attend three years of law school, his case falls outside the policy of the Act.

Sonneman, relying on *Brown* and *Herrick's Aero–Auto–Aqua Repair v. State, Dep't of Transp.*, 754 P.2d 1111, 1114 (Alaska 1988), asserts that saving costs alone is not a legitimate government objective under our equal protection analysis. Both cases are distinguishable. In both *Herrick's* and *Brown*, the *sole* purpose was to achieve a cost savings. *Herrick's*, 754 P.2d at 1114; *Brown*, 687 P.2d at 272. Here, the purpose is not *solely* thrift for its own sake; the purpose here is to preserve the fund's integrity and to provide training for the purpose of immediate employability so that an insured worker may find employment more readily. The state has chosen other vehicles to assist those wishing to pursue academic goals. AS 14.42.010–.390; AS 14.43.090–.250; AS 14.44.010–.060; 20 AAC 18.010–.090.

To summarize, the distinctions drawn by AS 23.20.378(c) and AS 23.20.382 are reasonable, not arbitrary, and are fairly and substantially related to their purposes. The legislature could reasonably conclude those pursuing academic degrees would impact the unemployment compensation fund's ability to fulfill its primary purpose more than those taking vocational training. Restricting benefits to those taking vocational training is fairly and substantially related to the purpose of preserving the integrity of the fund for those involuntarily

unemployed. Thus, the distinction drawn does not violate the state's equal protection guarantees.

Since the federal equal protection clause is, if anything, less protective of individual rights than the state equal protection clause, the above analysis necessarily results in the conclusion that the federal equal protection clause has not been violated. *See Idaho Dept. of Employment v. Smith*, 434 U.S. at 101, 98 S.Ct. at 328 (unemployment schemes subject only to rational basis scrutiny).

### B. SUBSTANTIVE AND PROCEDURAL DUE PROCESS.

#### 1. *Substantive Due Process.*

■ Sonneman argues that he has been denied substantive due process of law under both the state and federal Constitutions.[8] He contends that the state has no legitimate purpose in distinguishing between degree and non-degree students.

"Under the Alaska Constitution, substantive due process is denied 'when a legislative enactment has no reasonable relationship to a legitimate governmental purpose.'" *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 351 (Alaska 1988) (citation omitted). The same analysis applies to federal due process claims. *E.g., Nebbia v. New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 510–11, 78 L.Ed. 940 (1933). As observed above, the distinction drawn between degree and non-degree students is rationally related to a legitimate governmental purpose. Thus, Sonneman has not been denied substantive due process.

#### 2. *Procedural Due Process.*

■ Sonneman apparently does not argue that he has been denied "an opportunity to be heard and ... to adequately represent [his] interests." *Keyes*, 750 P.2d at 353. Instead, he appears to argue that he

---

**8.** Article I section 7 of the Alaska Constitution provides:

> No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

The Fourteenth Amendment to the U.S. Constitution provides in part:

> No state shall make or enforce any law which ... shall ... deprive any person of life, liberty, or property, without due process of law....

is the victim of arbitrary and capricious decision making by DOL.[9]

Sonneman contends that DOL could pick and choose among the three definitions in AS 23.20.378 (*see supra* note 3), AS 23.20.-520(19),[10] and AS 23.20.520(23) (*see supra* note 6) in order to deny him benefits. He contends that because these definitions are in conflict,[11] DOL arbitrarily denied him benefits.

While these definitions do overlap, they are not in conflict on these facts. Law schools clearly come within the plain meaning of all three complained of statutes. *See* AS 23.20.378; AS 23.20.520(19); AS 23.20.520(23). The three definitions thus do not result in arbitrary decision making by DOL.

## C. LAW SCHOOLS ARE NOT VOCATIONAL TRAINING SCHOOLS WITHIN THE MEANING OF AS 23.20.520(23).

■ Sonneman further contends that law schools are vocational training schools within the meaning of AS 23.20.520(23). This contention lacks merit. AS 23.20.-520(23) expressly excludes as non-compensable "program[s] of instruction for an individual ... which [are] intended as credit for a degree from an institution of higher education." Sonneman's attendance at Georgetown Law School has, as of the date of this opinion, earned him a J.D. Georgetown Law School is obviously an "institu-tion of higher education." *See* AS 23.20.-520(19). The plain language of the statute defeats Sonneman's claim.

While Alaska no longer adheres to a "plain meaning rule," where a statute's meaning, as here, appears clear and unambiguous, the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent. *Ward v. State*, 758 P.2d 87, 90 n. 5 (Alaska 1988); *Municipality of Anchorage v. Sisters of Providence in Washington, Inc.*, 628 P.2d 22, 27 n. 6 (Alaska 1981); *State v. City of Haines*, 627 P.2d 1047, 1049 (Alaska 1981).

Sonneman presents no evidence of legislative intent suggesting a contrary result. Indeed, as discussed above, the history underlying AS 23.20.520(23) shows an intent to limit compensation to the involuntarily unemployed. Sonneman voluntarily quit his job to go to Georgetown.

## D. SONNEMAN'S UNAVAILABILITY FOR WORK.

■ Sonneman first contested the DOL's finding that he was unavailable for work in his brief to this court. He failed to argue this point to the superior court. He also failed to raise it in his points on appeal to this court. As a general rule, this court does not review points not raised below or included in the points on appeal. *State v. Northwestern Construction, Inc.*, 741 P.2d 235 (Alaska 1987). However, if the issue is

---

9. Sonneman also contends that the superior court denied him due process by stating that agency expertise was involved in DOL's decision that law school was not a vocational school. He asserts that the superior court first raised this theory, violating his due process rights. Neither Sonneman nor the state argued to the superior court the appropriate standard of review on this question. However, this does not mean that the superior court may not choose the appropriate standard of review. Sonneman's argument is without merit.

10. AS 23.20.520(19) provides:
    (19) "institution of higher education" means an educational institution which
    (A) admits as regular students only individuals having a certificate of graduation from a high school, or the recognized equivalent of a high school graduation certificate;

(B) is legally authorized in the state in which it is located to provide a program of education beyond high school;
(C) provides an educational program for which it awards a bachelor's or higher degree, or provides a program which is acceptable for full credit toward either degree, a program of postgraduate or postdoctoral studies, or a program of training to prepare students for gainful employment in a recognized occupation; and
(D) is a public or other nonprofit institution....

11. Sonneman also asserts that the statutes empowering the Postsecondary Education Commission, AS 14.42.010–.055, must be considered by DOL. This argument is without merit. AS 14.-42.010–.055 does not control how DOL defines vocational training for purposes of the Employment Security Act.

1) not dependent on any new or controverted facts; 2) closely related to appellant's trial court arguments; and 3) could have been gleaned from the pleadings, or constitutes "plain error," we will nonetheless consider it. *Id.* at 239. Assuming, *arguendo*, that Sonneman has adequately presented the issue, he does not prevail on the merits. The DOL's finding that Sonneman was unavailable for work while in law school must be upheld if supported by substantial evidence. *Allen v. State, Dept. of Labor*, 658 P.2d 1342, 1345 (Alaska 1983). This court's task is to determine whether or not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists in the entire record. *E.g., Hoth v. Valley Construction*, 671 P.2d 871, 874 (Alaska 1983).

The evidence before the DOL showed that Sonneman would not accept any work conflicting with his schooling. He stated that he would not accept full-time work because of law school, but that he would be available for work during hours he was not in school. However, he did not know if he could manage both full time employment and law school. Such evidence suffices to support the DOL's determination that Sonneman was not available for full-time work. *State, Dep't of Labor v. Boucher*, 581 P.2d 660, 662 (Alaska 1978). Availability for part-time work does not suffice to qualify for unemployment.[12] *Id.*

AFFIRMED.

K.L.F., Appellant,

v.

---

12. Sonneman contends, in his reply brief, that he left unsuitable employment. However, he did not raise the issue in points on appeal or argue it in his opening brief. We do not consider issues raised for the first time in a reply brief. Alaska R.App.P. 212(c)(3); *Joseph v. Jones*, 639 P.2d 1014, 1018 (Alaska 1982).