STATE of Alaska, Appellant,

v.

Dennis Ray ANTHONY, James Richard Flake, David Matthew Logue, Richard R. Ecklund, Victor E. Chambers, on behalf of themselves and all other persons who are now or will be similarly situated, CASE NO. 3PA–88–1009 CI, Leroy K. Smith, Roger M. Pike, Patrick Plentnikoff, Richard D. Nitz, Michael A. Bateman, and Robert D. Lozzio, Robert D. Thrall, CASE NO. 3PA–88–601 CI, Reginald L. Silvernail, CASE NO. 3KN–88–816 CI, Anthony L. Brown, CASE NO. 3AN–88–8966 CI, Edward P. Lowry, CASE NO. 3AN–88–9165 CI, John C. Aspell, CASE NO. 3AN–88–8987 CI, Richard H. Krantz, CASE NO. 3AN–88–8986 CI, Sidney R. Hertz, Peter W. Thorsen, CASE NO. 3AN–88–10971 CI, Terry F. Newell, CASE NO. 3KN–88–966 CI, Robert G. Klink, CASE NO. 3KN–88–970 CI, Appellees.

STATE of Alaska, DEPARTMENT OF REVENUE, Appellant,

v.

Richard Carl SNYDER, Appellee.

Nos. S–3650, S–3765.

Supreme Court of Alaska.

April 26, 1991.

Marilyn May, Asst. Atty. Gen., Anchorage, and Jeffrey W. Bush, Asst. Atty. Gen., and Douglas B. Baily, Atty. Gen., Juneau, for appellant.

Pete Ehrhardt, Robinson, Beiswenger & Ehrhardt, Soldotna, for appellees Anthony, Silvernail, Newell and Klink.

Edward P. Lowry, Sidney R. Hertz, Anthony L. Brown, appellees pro se.

Leroy K. Smith, appellee pro se.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The issue in this appeal is whether AS 43.23.005(d),[1] which prohibits certain felons from collecting permanent fund dividends, violates the equal protection clause of the United States Constitution and/or the Alaska Constitution.[2] The superior court held the statute violative of "equal protection." We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

AS 43.23.005(d) provides that persons convicted of a felony, who are incarcerated during any period of a fiscal year as a result of the conviction, are ineligible for a permanent fund dividend (dividend) for that year.

Dennis Ray Anthony filed suit pro se in May 1988, challenging the constitutionality of AS 43.23.005(d). Other incarcerated felons later filed similar suits. In January 1989, all pending cases were consolidated. Some plaintiffs retained counsel to represent them. Other plaintiffs continued their pro se representation. Richard Carl Snyder filed suit in May 1989, also challenging the constitutionality of AS 43.23.005(d). Since cross-motions for summary judgment were pending in the consolidated *Anthony* cases at the time, the *Snyder* case continued separately to judgment.

In both cases, the inmates alleged that AS 43.23.005(d) violates the equal protection clause, the due process clause, and the prohibitions against ex post facto laws, bills of attainder, and cruel and unusual punishment in the Alaska and United States Constitutions. In both cases, the inmates prevailed on only the equal protection challenge. The state appealed. This court consolidated *Snyder* with *Anthony*. Since none of the inmates cross-appealed,[3] the sole issue before the court is whether the superior court erred in holding that AS 43.23.005(d) violates the equal protection clause of the United States Constitution and/or the Alaska Constitution.

## II. DISCUSSION

■ Constitutional questions are questions of law to which we apply our indepen-

---

**1.** AS 43.23.005(d) provides:

Notwithstanding the provisions of (a)–(c) of this section, an individual who has been convicted of a felony is not eligible for a permanent fund dividend for a year when, during all or part of the fiscal year ending June 30 of the current year, as a result of the conviction the individual is incarcerated. This subsection applies whether or not the individual has applied for the dividend.

**2.** The fourteenth amendment, section 1 of the United States Constitution provides:

Citizenship rights not to be abridged by states. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Article I, section 1 of the Alaska Constitution provides:

Inherent Rights. This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

**3.** Although Snyder filed a cross-appeal, he did not file a brief with this court. On October 11, 1990, we dismissed his cross-appeal pursuant to Alaska Appellate Rule 511.5.

dent judgment. *Sonneman v. Knight*, 790 P.2d 702, 704 (Alaska 1990). We adopt "the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

■ Our analysis focuses on the Alaska Constitution. Alaska's equal protection clause is more protective of individual rights than the federal equal protection clause. *Sonneman*, 790 P.2d at 706. In analyzing equal protection issues under the Alaska Constitution, we have rejected the traditional two-tiered federal approach in favor of a more flexible "sliding scale" test. *State v. Erickson*, 574 P.2d 1, 11–12 (Alaska 1978). We apply a three-step analysis:

First, it must be determined … what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review. . . .

Second, an examination must be undertaken of the purposes served by a challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.

Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken. . . . At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between the means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.

*Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 269–70 (Alaska 1984). *See also Sonneman*, 790 P.2d at 704.

A. What is the Nature of an Individual's Interest in a Permanent Fund Dividend?

■ Appellees argue that a person's interest in a permanent fund dividend is enti-tled to enhanced protection under state equal protection analysis because the source of the dividend is property belonging to state residents. They argue that since the Alaska Constitution provides specifically for the permanent fund, an individual's interest in a dividend is a constitutional right entitled to enhanced scrutiny. They rely on the following three sections of the Alaska Constitution:

The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people.

Alaska Const. art. VIII, § 2.

At least twenty-five percent of all mineral lease rentals, royalties, royalty sale proceeds, federal mineral revenue sharing payments and bonuses received by the State shall be placed in a permanent fund, the principal of which shall be used only for those income-producing investments specifically designated by law as eligible for permanent fund investments. All income from the permanent fund shall be deposited in the general fund unless otherwise provided by law.

Alaska Const. art. IX, § 15.

Laws and regulations governing the use or disposal of natural resources shall apply equally to all persons similarly situated with reference to the subject matter and purpose to be served by the law or regulation.

Alaska Const. art. VIII, § 17. The essence of the appellees' argument is that a dividend is more than the right to receive a check each year. According to the inmates, the dividend represents a constitutionally protected interest in the natural resources of the state.

The state counters that an inmate's interest in a dividend is less important than other interests which the court has held deserve only minimal scrutiny. It cites *Sonneman*, 790 P.2d 702, in which we held that the right to receive unemployment compensation benefits was entitled to review at the low end of the sliding scale.

The state also cites *State v. Ostrosky*, 667 P.2d 1184, 1193 (Alaska 1983) (the interest in being able to fish as a gear license holder in a fishery is "not of a high order"), and *Atlantic Richfield Co. v. State*, 705 P.2d 418, 437 (Alaska 1985) (the interest in freedom from disparate taxation is "at the low end of the continuum of interests protected by the equal protection clause").

Previously we indicated that we will apply only minimum scrutiny to a statute affecting an individual's right to a permanent fund dividend. *See Williams v. Zobel*, 619 P.2d 448, 459 (Alaska 1980) (applying the "fair and substantial relationship test," Alaska's substitute for the rational basis test), *rev'd on other grounds, Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). We concluded that the right to a dividend is not analogous to any situation in which the federal courts have applied strict scrutiny. *Williams v. Zobel*, 619 P.2d at 457. We held that a dividend is not a "basic necessity," *id.* at 455, nor is the right to receive it a "fundamental right," *id.* at 457. The United States Supreme Court declined to decide whether enhanced scrutiny was required in analyzing the rights at issue in *Zobel*, since it held that the preference given to those who had resided in Alaska longer than others was not rationally related to the goals of the statute. 457 U.S. at 60–63, 102 S.Ct. at 2313–2314.

A dividend is merely an economic interest and therefore is entitled only to minimum protection under our equal protection analysis. *See Wilson v. Municipality of Anchorage*, 669 P.2d 569, 572 (Alaska 1983). A dividend is not, generally, a source of income that individuals depend on to supply the basic necessities of life. *Williams v. Zobel*, 619 P.2d at 455. It is an annual lump sum payment and the recipients cannot know with certainty how much it will be in any given year.

It is useful to compare a dividend to other interests that this court has found are not entitled to "compelling interest" scrutiny. In *Sonneman*, we rejected the argument that the right to receive unemployment compensation benefits is an in-herent, fundamental right. 790 P.2d at 704–05. We have also held that an individual's interest in employment is not a fundamental right and therefore is not entitled to "compelling interest" scrutiny. *Hilbers v. Municipality of Anchorage*, 611 P.2d 31, 40 (Alaska 1980). *But cf., State v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 632 (Alaska 1989) ("right to engage in an economic endeavor within a particular industry is an 'important' right for state equal protection purposes"). We view an individual's interest in a permanent fund dividend as no more important than one's interest in employment or unemployment compensation benefits.

We have indicated that article VIII, section 17, of the Alaska Constitution *may* require a more stringent review than minimum scrutiny of statutes affecting an individual's use of natural resources. *Gilman v. Martin*, 662 P.2d 120, 125–26 (Alaska 1983) (Kenai Peninsula Borough ordinance limiting participants in a land sale lottery to those who had resided in the borough for at least a year held unconstitutional). We did not decide this issue in *Gilman* because the Kenai ordinance did not even pass the lower standard of review. *Id.* at 126. In addition, *Gilman* is easily distinguished from this case. While the Kenai ordinance directly affected an individual's right to buy government land, the permanent fund dividend statute at issue here only affects an individual's right to a share of the income derived from the state's land. No constitutional provision elevates the status of a dividend entitlement to the level of a disposal of a state natural resource. While the existence of the permanent *fund* is protected under article VIII, section 2, of the Alaska Constitution, this constitutional provision does not entitle each resident of the state to a *dividend* from the fund.

B.  Are the State's Purposes in Enacting AS 43.23.005(d) Legitimate?

Since an individual's interest in a dividend is reviewed at the low end of the sliding scale, the state is required to show only that "its objectives [in enacting AS 43.23.005(d) ] were legitimate." *See Alaska Pacific*, 687 P.2d at 269.

The explicit purpose of the statute is to obtain funds for the crime victim compensation fund, which is provided for in AS 18.67.162. Ch. 54, § 5, SLA 1988. We find this section indicative of legislative intent despite the fact that article IX, section 7 of the Alaska Constitution prohibits the dedication of proceeds of any public revenue to a particular purpose.[4] *State v. Alex*, 646 P.2d 203, 210 (Alaska 1982). The state budget for fiscal year 1990 allocated an amount equal to almost half of the $1.5 million the state anticipated obtaining through application of AS 43.23.005(d) to compensation of crime victims. An amount equal to the remainder of anticipated revenue was allocated to sex offender treatment programs and gate money for inmates.

The state asserts that another purpose of AS 43.23.005(d) is to compensate the state partially for the cost of incarcerating felons. No party disputed this alleged purpose at trial in either case. Appellee Smith, however, argues in his brief that the court should consider only the one stated purpose of the legislation—to compensate crime victims. Since we do not find any explicit indication in the legislative history that the purpose of AS 43.23.005(d) is to help pay for the costs of incarceration, we do not address this purpose.

Even if we chose to address this second purpose, our decision in this case would remain unchanged. None of the appellees argue that either compensating crime victims or compensating the state for the costs of incarceration is illegitimate. Instead, the inmates argue that the distinctions the statute draws are not sufficiently related to the state's goals to meet the requirements of the equal protection clause of the Alaska Constitution.

C. Do the Distinctions Drawn by the Statute Bear a Fair and Substantial Relationship to the Statute's Purpose?

■ Since an individual's interest in a permanent fund dividend is at the low end of our sliding scale, the state need only show that the distinctions drawn bear a fair and substantial relationship to the statute's objective. *Sonneman*, 790 P.2d at 705. We conclude that denying incarcerated felons dividends bears a fair and substantial relationship to the goal of compensating crime victims.

■ The fair and substantial relationship test does not require a perfect fit between a legislative classification and the government objective it is intended to further. *Wilson*, 669 P.2d at 572 (upheld statute conferring immunity on municipalities for liability arising from safety inspections of private property). *See also Ostrosky*, 667 P.2d at 1193 (upheld statute requiring an entry permit to fish commercially in certain areas).

Despite the language in *Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976), indicating that this court's lower level of scrutiny will be more rigorous and less deferential than the federal rational basis test, we have invalidated only two legislative enactments under the fair and substantial relationship test since *Isakson*. In *Gilman v. Martin*, we invalidated a Kenai Peninsula Borough Ordinance that limited participants in a land sale lottery to those who had resided in the borough for at least a year. 662 P.2d at 125. We concluded that the residency requirement did not bear a fair and substantial relationship to the purpose of the lottery—to sell selected parcels of land to "adjoining property owners or to leaseholders so as to resolve existing controversies regarding access and title." *Id.* at 126. Nonresidents owned over half of the property within the borough. *Id.* In *Gilman*, it is difficult to imagine any relationship between the legislative goal and the means the borough employed to further it. Here, there appears to be a relationship between the denial of dividends to incarcerated felons and compensation of crime victims.

---

4. Alaska Const., art. IX, sec. 7 provides:
   The proceeds of any state tax or license shall not be dedicated to any special purpose, except as provided in section 15 of this article [which provides for permanent fund] or when required by the federal government for state participation in federal programs.

In *Turner Constr. Co. v. Scales*, 752 P.2d 467 (Alaska 1988), we invalidated a statute barring suits against the designers or builders of an improvement to real property more than six years after substantial completion of the improvement. We held that there is no substantial relationship between exempting design professionals from liability, shifting the liability for defective design and construction to owners and material suppliers, and the goal of encouraging construction. *Id.* at 472.

In addition, *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255 (Alaska 1980), significantly narrowed the holding in *Isakson*. 606 P.2d at 1261. In *Apokedak*, we held that limiting applicants for entry permits to gear license holders bears a fair and substantial relationship to the purpose of avoiding unjust discrimination in the awarding of entry permits. *Id.* at 1266. We clarified that *Isakson* only invalidated the use of a specific date, January 1, 1973, in entry permit legislation. *Id.* at 1260–61.

Applying the fair and substantial relationship test, we have upheld legislative enactments in the following cases: *Sonneman*, 790 P.2d 702 (upheld denial of unemployment compensation benefits to individual who voluntarily terminated employment to enter law school); *Taylor v. Southeast–Harrison Western Corp.*, 694 P.2d 1160 (Alaska 1985) (providing greater compensation to estates of deceased workers leaving dependents than to deceased workers leaving no dependents bears a fair and substantial relationship to the overall purpose of the Workers' Compensation Act); *Wilson*, 669 P.2d 569, 572–73 (granting immunity to municipalities for liability arising from safety inspections of private property bears a fair and substantial relationship to the statute's purpose of encouraging municipalities to conduct safety inspections without the fear of a financially devastating lawsuit); *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 159–60 (Alaska 1982) (regulations which precluded award of "participation points" for year in which fishery was closed bear fair and substantial relationship to the goal of allocating a limited number of entry permits); *Hilbers*, 611 P.2d at 40–41 (municipal ordinance regulating massage parlors and physical culture studios bears fair and substantial relationship to the two purposes of the ordinance—controlling prostitution and reducing its adverse environmental effects); *Apokedak*, 606 P.2d at 1267 (In upholding a statute limiting the eligible pool of applicants for entry permits to gear license holders, the court stated, "[E]qual protection, even under Alaska's stricter standard, does not demand perfection in classification. If it did, there would be few laws establishing classifications that would sustain an equal protection challenge."); *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 437 (Alaska 1979) ("there is a fair and substantial relationship between the legislative objective of providing guaranteed, expeditious compensation to the injured employee and the limitation on the employer's total liability regardless of its percentage of fault"); *Younker v. Alaska Commercial Fisheries Entry Comm'n*, 598 P.2d 917, 922 (Alaska 1979) (regulations awarding limited entry permits according to point scheme which is in part based on percentage of one's income dependent on fish is substantially related to government objective of giving entry permits to those who would suffer greater hardship as a result of exclusion from the fishery); *State v. Erickson*, 574 P.2d 1, 15–16, 18 (Alaska 1978) (classification of cocaine as a narcotic bears a fair and substantial relationship to the legislative goal of outlawing drugs that are considered harmful to the health and welfare of society); and *State v. Reefer King Co.*, 559 P.2d 56, 65–66 (Alaska 1976) (imposition of higher tax upon floating processors of raw fish than upon shore-based processors bears a fair and substantial relationship to the goal of encouraging societal contributions of the type made by "shore-based" processors).

The statute at issue in this case draws two distinctions: (1) between felons and misdemeanants and (2) between those felons who are incarcerated and those who are not. Both classifications separate, at least to some extent, those who have in-

jured victims to a degree deemed highly significant by society and those whose infliction of injury is deemed less blameworthy.

Misdemeanants usually cause less harm to victims than felons. AS 11.81.250. The fact that a particular misdemeanant might cause as much or more harm than a particular felon does not mean that AS 43.23.-005(d) denies equal protection. Every law that attempts to allocate a benefit or burden contains some imperfection. For example, the residency requirement for a dividend is imperfect in that an individual who has lived in Alaska for precisely the requisite amount of time is eligible to receive a dividend, but another person who has lived in Alaska for one day less is not eligible. Nevertheless, the United States Supreme Court has implied that such a bona fide residency requirement is constitutional. *Zobel*, 457 U.S. at 58–59, 102 S.Ct. at 2311–2312.

Appellee Smith argues that the distinction drawn by AS 43.23.005(d) between incarcerated felons and felons whom the court does not sentence to serve jail time bears no relationship to the purpose of the legislation—to compensate crime victims. The essence of Smith's argument is that whether a particular felon is incarcerated does not depend on the degree of harm that the felon causes to his or her victims. In addition, he argues that all incarcerated felons lose their dividends even though some may have caused a great deal more harm to victims than others.

Smith compares two recent felony cases to illustrate his point. In *State v. Price*, 740 P.2d 476 (Alaska App.1987), the defendant was convicted of assault in the first degree but was not sentenced to serve more time in jail since he had already spent one year in jail for other crimes. In *State v. Ridgway*, 750 P.2d 362 (Alaska App. 1988), the court sentenced the defendant to serve five years in prison for sexual abuse of a minor in the first degree. Smith argues that both Price's and Ridgway's victims suffered harm, but Ridgway loses his dividend and Price does not.

We observe that those felons who actually serve time in prison generally have caused more harm to victims than those who receive suspended or probationary sentences. The purpose of Alaska's presumptive sentencing framework (AS 12.55.005–12.55.185) is to ensure that to the extent possible, similarly situated offenders receive similar sentences. *Lacquement v. State*, 644 P.2d 856, 860–61 (Alaska App. 1982). The extent to which the offense harms the victim is one of the specific factors the statute requires the sentencing court to consider. AS 12.55.005(4). The degree of physical or psychological violence involved in the offense is also an important factor in sentencing. *Kelly v. State*, 622 P.2d 432, 436 (Alaska 1981).

It is possible that a felon may have his dividend taken by the state even though he has already paid restitution to his victim. Section 12.55.045 of the Alaska statutes permits a court to order a defendant convicted of an offense to make restitution to the victim and to public or private organizations which have provided services to the victim. There are, however, at least two reasons why individual restitution orders may be inadequate: (1) a felon who owes a victim restitution might not even apply for a permanent fund dividend since he or she will not benefit from it;[5] and (2) since many felons do not have the means to pay restitution, victims must depend on the crime victim's compensation fund. We think it irrelevant that a judge may require a particular felon to pay restitution to the victim. Specific restitution is simply an element of a larger picture. Again, equal protection does not require perfection. We are persuaded that those felons who are sentenced to serve time in prison are more likely than those who are not sentenced to incarceration to have seriously harmed others.[6]

---

5. *See* Minutes of Senate Health, Education & Social Services Committee (March 9, 1988) at 11.

6. If one accepts that one purpose of AS 43.23.-005(d) is to cover part of the costs of incarceration, the relationship between the means and the end of the statute is clear. Only those felons

The trial court was specifically troubled by the fact that one of two individuals who are arrested at the same time for the same crime might receive a dividend while the other might not. This could occur, for example, if one cannot make bail and therefore spends ten days in jail. Later, both are convicted and sentenced to serve ten days in jail. The one who could not make bail gets credit for the time already served and therefore does not spend any time in jail as an incarcerated felon. The other is incarcerated and forfeits his or her dividend.

The state responds that both felons in the trial court's example would be ineligible for dividends. According to the state, even if an individual is sentenced only to "time served," the incarceration is deemed to have commenced on the date of sentencing and therefore will be deemed to have been served "as a result of the conviction." The state concedes that some criminals who cause harm to victims may continue to receive a dividend while others who cause harm do not. The state argues, however, that the distinctions drawn by AS 43.23.-005(d) are sufficiently related to the statute's purpose to meet the requirements of the equal protection clause of the Alaska Constitution. We agree.

### III. CONCLUSION

An individual's interest in a permanent fund dividend, like other economic interests, is entitled to minimum scrutiny. Therefore, the state must show only that its purposes are legitimate and that the challenged statute bears a fair and substantial relationship to these purposes. Since AS 43.23.005(d) bears a fair and substantial relationship to the legitimate goal of compensating crime victims, the statute does not violate the equal protection clause of the Alaska Constitution. Since the federal equal protection clause is less protective of individual rights than Alaska's equal protection clause, the statute also does not violate the equal protection clause of the United States Constitution. The

who serve time in prison contribute to the in-

judgment of the superior court is REVERSED.

carceration costs incurred by the state.