William **WILKERSON**, Appellant,

v.

**STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF FAMILY AND YOUTH SERVICES, Appellee.**

No. S–8652.

Supreme Court of Alaska.

Dec. 17, 1999.

---

**1020**

Dan S. Bair, Law Offices of Dan S. Bair, Anchorage, for Appellant.

Jan Hart DeYoung, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

A state regulation automatically denies a foster care license to any applicant charged with a "serious offense" within the last ten years, whether or not the charge resulted in a conviction. The Alaska Division of Family and Youth Services denied William Wilkerson's application because he had been charged with serious offenses. We hold that the regulation does not violate Wilkerson's rights of equal protection or due process because it is an efficient means of eliminating applicants who pose a potential risk to foster children; the state's compelling interest in the welfare of its foster children greatly outweighs any property interest the applicant might have.

## II. *FACTS AND PROCEEDINGS*

In May 1996, and again in September 1996, William Wilkerson applied to the Alaska Division of Family and Youth Services (DFYS) for a child foster care license. DFYS's routine investigation revealed that Wilkerson had been charged with committing crimes. The charges were for various offenses: disorderly conduct (1981), assault (1984 and 1988), property damage (1984), a weapons offense (1984), and the possession or sale of dangerous drugs (1988, 1989, and 1993). Wilkerson was convicted on two of the charges, disorderly conduct and a weapons offense, although the disorderly conduct conviction was later set aside. The remaining charges were dismissed without prosecution.

A regulation, 7 Alaska Administrative Code (AAC) 50.210(c)(5) (1999), requires DFYS to deny a foster care license to an applicant who, within the past ten years, was

under indictment, charged by information or complaint, or convicted of a misdemeanor crime of assault, reckless endangerment, misconduct involving a controlled substance, or perjury, as defined in AS 11 or the laws of another jurisdiction ... [or] at any time, under indictment, charged by information or complaint, or convicted of a serious offense, as defined in AS 12.62.900. [1]

Four of Wilkerson's charges, but none of his convictions, occurred within ten years of his application. Applying 7 AAC 50.210(c)(5), DFYS denied Wilkerson's application.

DFYS gave four additional reasons for denying Wilkerson's application: (1) his prior charges and convictions; (2) his pattern of

---

**1.** AS 12.62.900 states in relevant part:

(23) "serious offense" means a conviction for a violation or for an attempt, solicitation, or conspiracy to commit a violation of any of the following laws, or of the laws of another jurisdiction with substantially similar elements:

  (A) a felony offense;
  (B) a crime involving domestic violence;
  (C) AS 11.41.410—11.41.470;

  (D) AS 11.51.130;
  (E) AS 11.61.110(a)(7) or 11.61.125;
  (F) AS 11.66.100—11.66.130; or
  (G) former AS 11.15.120, former 11.15.134, or assault with the intent to commit rape under former AS 11.15.160;
  (H) former AS 11.40.080, 11.40.110, 11.40.130, or 11.40.200—11.40.420, if committed before January 1, 1980.

involvement with known drug users and dealers; (3) his failure to provide complete and accurate information regarding his criminal history in his license application; and (4) reports that he might have physically abused his five-year-old son.

Wilkerson, appearing pro se, appealed the denial to the Department of Health and Social Services (DHSS). He argued that he did not give false information on his application and that denying his application on the basis of dismissed charges violated his right to due process. The hearing officer concluded that he did not have jurisdiction to hear Wilkerson's constitutional challenge. But because the parties did not dispute that Wilkerson did not meet the requirements of 7 AAC 50.210(c)(5), the hearing officer granted summary judgment to DFYS on that basis alone. The hearing officer did not reach DFYS's other bases for denial. The DHSS commissioner then adopted the hearing officer's decision in its entirety.

Wilkerson appealed pro se to the superior court. He again asserted the unconstitutionality of 7 AAC 50.210(c)(5) under the equal protection and due process clauses. The superior court concluded that Wilkerson had waived his constitutional challenges due to inadequate briefing, noting that he had "failed to provide any citation of legal authority or legislative history and his argument is cursory and undeveloped." The court therefore affirmed DFYS's denial of Wilkerson's application.

Wilkerson, now represented by counsel, appeals.

## III. DISCUSSION

### A. Standard of Review

■ We apply our independent judgment when reviewing an intermediate appellate

court's finding of waiver due to inadequate briefing.[2]

■ Wilkerson's constitutional challenges to 7 AAC 50.210(c)(5) raise questions of law,[3] which we review de novo, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

### B. Wilkerson Did Not Waive His Constitutional Challenges.

■ The state argues that Wilkerson failed to preserve his constitutional challenges in the superior court by briefing them inadequately. When reviewing agency decisions, the superior court sits as an intermediate court of appeal and applies the Alaska Rules of Appellate Procedure.[5] Appellate Rule 212(c)(1)[i] requires that the argument portion of the appellant's brief "contain the contentions of the appellant ... and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Accordingly, we have held that superficial briefing and failing to cite any authority constitute abandonment of a point on appeal.[6]

Wilkerson's superior court brief presented only conclusory arguments that applying 7 AAC 50.210(c)(5) would deny him his rights to equal protection and due process of the law. It failed to identify or apply the tests the courts use in reviewing the constitutionality of laws under those provisions. The state argues that these omissions are fatal.

■ Wilkerson excuses his omissions by arguing that, because the issue is one of first impression, "[t]he usual avenues of legal research within the reasonable grasp of a pro se litigant ... were not helpful to [him]." That Wilkerson proceeded pro se did not

2. See Cameron v. Hughes, 825 P.2d 882, 884 n. 2 (Alaska 1992) (applying de novo standard of review to trial court's interpretation of appellate rule).

3. See Keane v. Local Boundary Comm'n, 893 P.2d 1239, 1241 (Alaska 1995) (noting constitutional issues present questions of law).

4. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. See Alaska R.App. P. 601(b), (c). See also Alaska R.App. P. 605(a)(3) (applying substantive requirements of Rule 212(c) to appeals from administrative agencies to superior court).

6. See, e.g., Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc., 694 P.2d 150, 153 n. 4 (Alaska 1984); State v. O'Neill Investigations, Inc., 609 P.2d 520, 528 (Alaska 1980); Wernberg v. Matanuska Elec. Ass'n, 494 P.2d 790, 794 (Alaska 1972); Lewis v. State, 469 P.2d 689, 691 n. 2 (Alaska 1970).

relieve him of the obligation to brief the issues he raised.[7] Nevertheless, "we hold the pleadings of pro se litigants 'to less stringent standards than those of lawyers.' "[8]

The essence of Wilkerson's argument was easily discerned from his briefs: "because the charges against him were dismissed, denying his license application on the basis of those dismissed charges unfairly and unjustly deprives [him] of his rights." He also clearly identified the equal protection and due process rights on which he based his argument. He reiterated his challenges in oral argument before the superior court. Wilkerson's failure to identify and apply the precise legal tests for determining a violation of those constitutional provisions is not fatal; those tests are well established and could have been easily applied by the superior court. At the least, any confusion regarding Wilkerson's challenge could have been clarified by the superior court or the state at oral argument.

Moreover, the state would not have been prejudiced had the court considered Wilkerson's constitutional challenges. Wilkerson did not ask the court to consider a multitude of inadequately briefed issues or bury the issues amongst others. The parties did not dispute the underlying facts. The state could have easily addressed the two constitutional issues. At oral argument before the superior court, the state responded substantively to Wilkerson's constitutional arguments.

We therefore conclude that Wilkerson adequately preserved his constitutional challenges, and that the superior court should not have dismissed them for inadequate briefing. Because his appeal presents pure questions of law and the underlying facts are undisputed, we will address his constitutional challenges on the merits rather than remand them for consideration by the superior court.

The state does not argue that Wilkerson's constitutional issues are mooted on a theory that there are alternative grounds for disqualifying Wilkerson. We decline to raise mootness sua sponte and to affirm on that ground here, because the record does not establish that the hearing officer would have disqualified Wilkerson on unconsidered, alternative grounds. And because it is likely that the issue will recur, we will proceed to the merits.

C. *The Regulation Does Not Violate the Equal Protection Clause of the Alaska Constitution.*

██ Wilkerson claims that 7 AAC 50.210(c)(5) arbitrarily distinguishes between applicants charged with crimes but not convicted and applicants not charged with crimes.[9]

Article I, section 1 of the Alaska Constitution provides in part that "all persons are equal and entitled to equal rights, opportunities, and protection under the law."[10] We have interpreted this language to require a "sliding scale of review" rather than the tiered approach of federal equal protection analysis.[11] In applying the sliding scale approach, we have noted that the Alaska Constitution "often affords greater protection to individual rights than that provided by the federal constitution."[12]

██ Under the sliding scale approach:

7. *See, e.g., A.H. v. W.P.,* 896 P.2d 240, 243–44 (Alaska 1995) (waiving for inadequate briefing majority of fifty-six arguments raised by pro se appellant).

8. *Wright v. Shorten,* 964 P.2d 441, 444 (Alaska 1998) (quoting *Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987)).

9. Wilkerson's brief attacks the constitutionality of the regulation *and* its authorizing statute, AS 47.35.130(a)(2)(A) and (B). Because the regulation creates the classification Wilkerson complains of and applies it to new applicants for a foster care license, we focus our analysis on the

regulation. We need not address the constitutionality of the statute unless we determine that the regulation is unconstitutional.

10. On appeal, Wilkerson's equal protection and due process challenges rely exclusively on the Alaska Constitution. He docs not invoke the federal constitution.

11. *See State v. Ostrosky,* 667 P.2d 1184, 1192–93 (Alaska 1983); *see also Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264, 269–70 (Alaska 1984).

12. *Laborers Local No. 942 v. Lampkin,* 956 P.2d 422, 429 (Alaska 1998); *see also Williams v.*

[W]e first determine the importance of the individual interest impaired by the challenged enactment. We then examine the importance of the state interest underlying the enactment, that is, the purpose of the enactment. Depending upon the importance of the individual interest, the equal protection clause requires that the state's interest fall somewhere on a continuum from mere legitimacy to a compelling interest. Finally, we examine the nexus between the state interest and the state's means of furthering that interest. Again depending upon the importance of the individual interest, the equal protection clause requires that the nexus fall somewhere on a continuum from substantial relationship to least restrictive means.[13]

### 1. What is the nature of an individual's interest in a foster care license?

Because a foster parent receives a state stipend, Wilkerson claims that his interest in a foster care license is in pursuing an "economic endeavor." [14] We have recognized that pursuit of an economic endeavor is an important right which the government may impair only if its interest is important and there is a close nexus between that interest and the legislation.[15]

The state argues that "foster care is not an occupation." In support, it notes that a foster parent is not a state employee and may be otherwise employed. It acknowledges that foster parents receive a state stipend, but argues that it is "calculated to cover only the expenses the foster parent must incur to provide 'protection, emotional support, and care of the child.' "

The state's arguments are persuasive. Payment is triggered by the child's presence in the foster home, not by an individual's status as a foster parent.[16] As a result, a foster parent cannot know with certainty how much he or she will receive in a given year.[17] Although foster care payments supplement household income, they are not intended to be a source of income to provide foster parents with the basic necessities of life.[18] The stipend is calculated by the state to do no more than cover the foster child's own costs; the standard rate for child foster care is $21.48 per day or $7,840 per year.[19] The stipend is intended to provide economic benefits only for the foster child, but not the foster parent. Indeed, it would be worrisome to think that an applicant for a foster parent license would be motivated by personal economic gain.

These facts distinguish this case from cases like *Laborers Local No. 942 v. Lampkin.*[20] At issue there was a project labor agreement which was challenged as violating the equal protection rights of non-union workers in the construction field.[21] The non-union workers claimed that the agreement impaired their ability to engage in an economic endeavor. Based on that assumption, they claimed we were required to determine whether the government's interest in the project labor agreement was "important" and whether the nexus between that interest and

*State, Dep't of Revenue,* 895 P.2d 99, 103 (Alaska 1995).

13. *State, Dep't of Transp. & Labor v. Enserch Alaska Constr., Inc.,* 787 P.2d 624, 631–32 (Alaska 1989) (citations omitted).

14. Wilkerson does not argue that the denial of a foster care license implicates associational or family rights, or a liberty interest. We do not decide here whether a current foster care licensee or a current licensee with a long-term relationship with a foster child could assert those rights or interest. Wilkerson was an applicant for a new license.

15. *See Laborers Local,* 956 P.2d at 430 (citing *Enserch,* 787 P.2d at 633).

16. *See* 7 AAC 53.080.

17. *Cf. State v. Anthony,* 810 P.2d 155, 158 (Alaska 1991) (holding one has only minimal economic interest in permanent fund dividend given lack of certainty regarding amount of dividend).

18. *Cf. id.* (holding an individual's economic interest in dividend is subject to minimal protection because permanent fund dividend is "not, generally, a source of income that individuals depend on to supply the basic necessities of life").

19. *See* 7 AAC 53.030(b). The stipend is also adjusted by percentage for age and multiplied by a geographic cost-of-living amount. *See id.*

20. 956 P.2d 422.

21. *See id.* at 429.

the project labor agreement was "close." [22] Unlike foster care, construction work is a source of sustaining income. Thus, an individual's right to work in the industry is an important one.

At most, an individual's interest in a foster care license is merely economic, entitled to minimal protection under our equal protection analysis. [23] And this interest is marginal because an applicant for a foster parent license has no legitimate economic interest in holding a license.

### 2. Does the regulation have a legitimate purpose?

Because the challenged regulation is subject to minimum scrutiny, the state only needs to show that the regulation was designed to achieve a legitimate government objective. [24] Both parties agree that the objective of the regulation is to protect foster children and to ensure the provision of quality care for them. At the same time, the state has an interest in efficiently selecting caregivers for Alaska's foster children. [25] DHSS has concluded that those persons who may have engaged in criminal behavior are unable to provide a positive role model and may present a risk of harm to children in their care. [26] The protection of minors is a compelling interest, [27] and efficiency is a legitimate interest. [28]

### 3. Does the distinction the regulation draws bear a fair and substantial relationship to the regulation's purpose?

Because an individual's interest in a foster care license is only entitled to minimal protection, to satisfy equal protection the state need only show that the regulation's classification bears a fair and substantial relationship to the regulation's objective. [29] Resolving this issue depends on whether a criminal charge absent conviction has any relevant meaning. Will a person charged but not convicted necessarily be less likely to be a suitable foster parent?

Although the "fair and substantial" standard demands that the fact of a criminal charge have some significance, it does not require a perfect fit between a legislative classification and the government objective it is intended to further. [30] A criminal charge does not have to be meaningful in all cases,

---

**22.** See id. at 430.

**23.** See Church v. State, 973 P.2d 1125, 1128 (Alaska 1999) (holding that permanent fund dividends are economic interests entitled to minimum protection); Williams, 895 P.2d at 104 (holding that workers' compensation benefits are economic interests entitled to minimum protection).

**24.** See Church, 973 P.2d at 1128.

**25.** See AS 47.35.005(a) ("The purpose of this chapter is to establish and maintain standard levels for services offered to children in . . . foster homes. . . . The . . . licensing procedures in this chapter are intended to reduce predictable risk of harm to children. . . .").

**26.** See, e.g., 7 AAC 50.200(b) ("foster parent must be of good character and reputation"); 7 AAC 50.210(a) (requiring foster parent to "be a responsible individual of reputable character who exercises sound judgment."); 7 AAC 50.210(k) ("A reference must . . . attest to the [prospective foster parent's] ability to . . . act as a positive role model for children[.]").

**27.** See, e.g., In re J.A., 962 P.2d 173, 177 (Alaska 1998); In re D.D.S., 869 P.2d 160, 163 (Alaska 1994).

**28.** See Williams, 895 P.2d at 104 (holding that efficient delivery of indemnity and medical benefits to injured workers is "legitimate goal" under equal protection analysis); Underwood v. State, 881 P.2d 322, 325 (Alaska 1994) (holding that improving efficiency of permanent fund dividend program is legitimate goal under equal protection analysis); cf. Commercial Fisheries Entry Comm'n v. Apokedak, 606 P.2d 1255, 1266 (Alaska 1980) ("Although the purpose of promoting administrative convenience is legitimate, it cannot outweigh the important right to engage in an economic endeavor[.]").

**29.** See Williams, 895 P.2d at 104; Chiropractors for Justice v. State, 895 P.2d 962, 972 (Alaska 1995).

**30.** See Anthony, 810 P.2d at 161 ("Every law that attempts to allocate a benefit or burden contains some imperfection."); Ostrosky, 667 P.2d at 1193 ("[A] greater degree of over/or underinclusiveness in the means-to-ends fit will be tolerated" at the lower end of the equal protection scale.); Apokedak, 606 P.2d at 1267 ("[E]qual protection, even under Alaska's stricter standard, does not demand perfection in classification.").

or even suggest a probability that a particular applicant will engage in harmful behavior.

Wilkerson argues that a criminal filing does not establish the truth of the criminal charge; it is merely an ex parte determination that "probable cause" exists on the evidence presented. As a result, Wilkerson contends that the regulation "sweep[s] too broadly," eliminating from the applicant pool innocent criminal defendants who might otherwise meet the foster parent licensing requirements.

The state essentially argues that charging a person with a crime requires some evidence supporting the charge. A criminal complaint or information must be supported by "probable cause." A grand jury may indict "upon sufficient evidence."[31] That is evidence that if unexplained or uncontradicted, is adequate to persuade reasonable jurors or a judge to convict a person of the offense charged.[32] The indictment indicates that there is evidence sufficient to establish a probability of guilt.[33] Given the importance of protecting foster children, the state contends that it is entitled to rely on "probable cause" when determining who should become foster parents. The state implies that the broad sweep of the regulation is necessary to ensure that foster children are not exposed to persons who have committed crimes but were not convicted.

We agree with the state's argument. A rule of automatic denial based on the existence of a criminal charge filed in compliance with applicable law is an efficient means of eliminating applicants as to whom there is some reason to believe they engaged in criminal behavior in the past and might therefore pose a risk of harm to foster children. Given the importance of the state's interest in protecting foster children, and the minimal economic interest that Wilkerson has in becoming a foster parent, equal protection does not require a more narrowly tailored regulation.

### D. The Regulation Does Not Violate the Due Process Clause of the Alaska Constitution.

■ Wilkerson claims that the regulation violates substantive due process because it precludes an impartial review of the facts alleged in an ex parte indictment, information or complaint. Wilkerson's substantive due process claim overlaps his equal protection claim. But substantive due process requires less of a nexus between the challenged regulation and its objective than does equal protection. "Substantive due process is denied when a legislative enactment has *no reasonable relationship* to a legitimate governmental purpose."[34] Thus, for the reasons stated above in the discussion of Wilkerson's equal protection claim, we conclude that the regulation does not violate substantive due process.

■ Wilkerson also suggests that the state denied him procedural due process by not providing an opportunity to be heard regarding his criminal record. When determining the requirements of due process, we look to the test enunciated by the United States Supreme Court in *Mathews v. Eldridge:*[35]

[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if

---

**31.** AS 12.40.050.

**32.** *See State v. Parks,* 437 P.2d 642, 644 (Alaska 1968); Alaska R.Crim. P. 6(q) (stating that grand jury may indict "when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant.").

**33.** *See State v. Ladd,* 951 P.2d 1220, 1222–23 (Alaska App.1998).

**34.** *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974) (emphasis added). *See also*

*Williams,* 895 P.2d at 102; *Municipality of Anchorage v. Leigh,* 823 P.2d 1241, 1244 (Alaska 1992).

**35.** 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See also City of Homer v. State, Dep't of Natural Resources,* 566 P.2d 1314, 1319 (Alaska 1977) (looking to *Mathews v. Eldridge* to determine whether administrative procedure met requirements of due process).

any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[36]

The *Mathews* factors indicate no procedural due process violation here. As seen above, the private interest affected is minimal.[37] The risk of an erroneous deprivation is high; automatic denial means that the application of even an innocent criminal defendant will be rejected. A hearing would give the applicant an opportunity to explain the charges against him or her and why they were dismissed. But requiring a hearing would impose a significant administrative and fiscal burden on state government. DFYS would have to inquire into the circumstances of each criminal charge, determine its importance, and potentially defend its decision at a hearing. We cannot justify this burden on the government given the minimal importance of the individual interest affected.

## IV. *CONCLUSION*

We reject Wilkerson's equal protection and due process challenges to 7 AAC 50.210(C)(5) and AS 47.35.130(a)(2)(A) and therefore AFFIRM the superior court's judgment.

---

**36.** 424 U.S. at 334–35, 96 S.Ct. 893.

**37.** *See supra* Part III.B.1.