**KETCHIKAN GATEWAY BOROUGH, ALASKA, Appellant,**

v.

**Paul BREED d/b/a Flair Air, Appellee.**

No. 5054.

Supreme Court of Alaska.

Aug. 28, 1981.

Russell W. Walker, Municipal Atty., Ketchikan, for appellant.

John W. Peterson, Ziegler, Cloudy, Smith, King & Brown, Ketchikan, for appellee.

Norman E. Staton, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for amicus curiae, State of Alaska.

Before RABINOWITZ, C.J., CONNOR, BURKE and MATTHEWS, JJ., and BLAIR, Superior Court Judge.*

OPINION

MATTHEWS, Justice.

The Ketchikan Gateway Borough operates a seaplane float on Gravina Island at which seaplanes may dock in order to load and unload passengers. It charges a $2.00 flat fee each time a seaplane uses the facility. The Borough also operates Ketchikan International Airport on Gravina Island. It charges various landing fees for aircraft in excess of 6,000 pounds but allows aircraft lighter than 6,000 pounds to land without charge.

The Borough sued appellee for $1,056.00 in unpaid fees relating to his use of the seaplane float with aircraft lighter than 6,000 pounds. He defended on the basis that the fee schedule was discriminatory. Upon the Borough's motion for summary judgment, the superior court held in favor of the appellee and concluded that the $2.00 fee for use of the seaplane float violates the equal protection clauses of the United States and Alaska Constitutions.

▮ Equal protection requires that those similarly situated be treated equally

---

* Blair, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Alaska constitution.

and that classifications made by government which call for different treatment of citizens be reasonable.[1] In the present case it is difficult to relate points of similarity between docking a light plane at the seaplane float, and landing a light plane at Ketchikan International Airport. The classification distinguishing between docking at the float and landing at the airport is obviously reasonable.[2]

The judgment is REVERSED and the case is REMANDED with directions to enter summary judgment in favor of appellant.

COMPTON, J., not participating.

1. With one exception not pertinent here: classifications must be based on compelling governmental interests when fundamental rights and suspect categories are at issue. *Isakson v. Rickey,* 550 P.2d 359, 362–63 (Alaska 1976).

2. The Borough offers the following reasons, which we find to be plausible, justifying the disparate treatment:

[L]and based airplanes pay fuel flowage fees (KGB Code § 15.10.050), seaplane float users need not; land based planes pay fees for airfield parking and tying down (KGB Code § 15.10.030), seaplane float users need not; land based airplane owners, operators, their employees and passengers pay ferry fees and automobile parking fees (KGB Code § 15.10.-020; § 15.11.005–.055), seaplane float users, their employees and passengers need not. All of the fees from all of the various users, including land based users of the landing field, constitute a financial contribution to the maintenance and operation of the airport. Land based planes of similar size as seaplane float users merely contribute financially by fuel, lease, parking, ferry and other charges rather than a simple float fee as do seaplane float users (Affidavit of Borough Manager, R. 51–56). Seaplanes equipped to land on the landing field are, in such event, treated exactly the same as other aircraft using the landing field.

Other considerations are that aircraft 6,000 pounds or less do not impact 'or require elaborate facilities such as those provided at Ketchikan' (R. 36); costs of collection problems; that touch-and-go training flights would complicate the computation of field landing fees; and that 'the general aviation facilities on the Ketchikan Airport are underutilized at the present time' and that 'a consistent policy of charging no landing fees for aircraft under 6,000 pounds may help to increase the number of private aircraft based at the airport, as well as increase the number of aircraft using the airport as a fueling stop, etc.' (R. 36) Any increase in fueling would increase the Borough revenue available for payment of the costs of airport operation and maintenance due to the fuel flowage fees charged by KGB Code § 15.10.050. Appellant's brief at 24–25.