**Ronnie DeMASTERS, Plaintiff,**

v.

**STATE OF MONTANA; Montana Department of Fish, Wildlife and Parks; James W. Flynn, Director, Montana Department of Fish, Wildlife and Parks; Montana Fish and Game Commission; Spencer S. Hegstad; Don Bailey; Dan Oakland; Jim Olson; and Robert Jensen, the individual Commissioners thereof, Defendants.**

**No. CV 86–6–H–CCL.**

United States District Court,
D. Montana,
Helena Division.

Feb. 7, 1986.

John P. Atkins, Bryan & Atkins, Bozeman, Mont., for plaintiff.

Robert Lane, Stan Bradshaw, Montana Department of Fish, Wildlife & Parks, Helena, Mont., for defendants.

MEMORANDUM AND ORDER

LOVELL, District Judge.

Do Montanans, acting through their duly elected state government, have the right to grant unlimited elk hunting licenses to Montana residents (approximately 90,000 annually) while restricting yearly nonresident elk hunting licenses to 17,000—or does this disparate treatment violate the rights of nonresident hunter applicants under the United States Constitution?

This is the issue raised by plaintiff, a resident of New Mexico, who has brought this suit seeking declaratory judgment and a preliminary injunction stopping the present practice and requiring that nonresidents be treated equally with residents. The court heard plaintiff's motion on February 4, 1986, receiving documentary evidence and testimony and hearing argument of counsel. Now, having fully considered the facts, the briefs and the law, I decide the issues as follows for the reasons hereafter stated.

*Standing and Jurisdiction.* Preliminarily, I hold that plaintiff has status and standing to bring this suit. He is a nonresident who has sought the privilege of hunting elk in Montana in the past and who desires to hunt elk here in the future. Plaintiff was adversely affected in 1985 by the statutory limit on nonresident hunters (he was refused a license) and could again be adversely affected in 1986 by the same system. Since nonresident license sales will commence on the Monday following

the Thursday evening when this opinion is written, I find that this case presents a justiciable controversy. Accordingly, this court has jurisdiction to decide the issues on the merits. *See Montana Outfitters Action Group v. Fish and Game Commission*, 417 F.Supp. 1005, 1008 (D.Mont.1976), *affirmed in, Baldwin v. Montana Fish and Game Commission*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978).

*Requisites for Injunctive Relief.* The decision to grant or deny temporary injunctive relief is committed to the discretion of the trial court. *Oakland Tribune, Inc. v. Chronicle Publishing co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985); *Sierra On-Line, Inc. v. Phoenix Software*, 739 F.2d 1415 (9th Cir.1984).

The standard for issuance of a preliminary injunction is well settled within the Ninth Circuit. A party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor. *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir.1984). *See also Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200–01 (9th Cir.1980). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success on the merits decreases. *Los Angeles Memorial Coliseum*, 634 F.2d at 1201. Under any formulation of the test, plaintiff must demonstrate that he has a substantial chance of prevailing on the merits—more than a mere possibility of success.

*Factual Background.* The American Wapiti or elk is a wild animal which inhabited the prairies of what is now Montana when Lewis and Clark first arrived here. With the relentless advance of civilization the elk—in order to survive—was forced into the mountains of central and western Montana. The elk is a finite resource, i.e. its numbers are limited, and it cannot withstand unlimited hunting. Nonetheless, the elk has flourished as a mountain inhabitant. This is largely due to Montana's prudent and consistent game management program.

Elk in the wild are not hunted commercially. The elk is recognized by many Montanans as an important source of meat. However, many hunters, resident and nonresident alike, view the elk as primarily a trophy animal. Almost all nonresident hunters are in this latter category.

The nonresident who hunts in Montana must purchase a B–10 combination license.[1] Residents may purchase an elk license only. Not all nonresidents who desire to hunt elk in Montana may do so because of the limitation of 17,000 licenses. Any Montana resident meeting minimum requirements such as age may purchase an elk license.

I compute that about 16% of the total number of big game hunters in Montana are nonresidents, and that plaintiff has about a 63% chance of securing a 1986 license, based upon 1985 figures.

Summarizing, to focus on the issue, 100 per cent of the eligible residents who wish to do so may hunt elk, but only approximately two out of three nonresident applicants are licensed yearly to hunt Montana elk.

*Constitutional questions.* Plaintiff claims he is denied his rights under the privileges and immunities clause,[2] under the equal protection clause,[3] and under the due process clause[4] of the United States Constitution. I fail to see any due process question, whatever. I believe plaintiff has confused this claim and argument with rights guaranteed under the equal protection clause.

---

1. Mont.Code Ann. § 87–2–505 (1985). In addition to entitling the hunter to take an elk, the nonresident combination license provides the holder the opportunity to fish and to pursue other big-game species.

2. U.S. Const. art. IV, § 2.

3. U.S. Const. amend. XIV.

4. *Id.*

I therefore summarily resolve the due process claim adversely to plaintiff and proceed to separately consider the privileges and immunity claim and the equal protection claim.

■ *Privileges and Immunities Clause.* It is not disputed that Montana has the power to manage and conserve its elk population, and to make such laws and regulations as are necessary to protect and preserve the elk herds. Whether, in the state's game management program, discrimination between resident and nonresident hunters is permissible requires examination of the claimed right, the state purpose involved, and the justifications for the discrimination.

The right asserted by plaintiff is recreational in nature. He seeks the opportunity to engage in pure sport. There is no claim in this case that any commercial interest is at stake, and no claim that plaintiff's livelihood is threatened. Not everyone may hunt elk. Not everyone has the required skill, the physical strength or financial resources to engage in the sport. A nonresident hunter who hires a licensed outfitter to assist him in an elk hunt may expect to spend about $2,000 for a remote hunt.

Moreover, there are simply too few elk to allow unlimited hunting. If the elk is to survive as a species, the game herds must be managed. A critical part of the state's management plan is regulation, and limitation of the annual harvest. Any management tool designed to limit the annual kill necessarily involves the limitation of hunting opportunities.

Importantly, a nonresident hunter's ability to engage in an elk hunt in Montana is dependent upon the willingness of the people of Montana to manage the elk and to preserve the necessary wildlife habitat.

I first consider whether the distinction between residents and nonresidents in establishing access to elk hunting threatens a basic right in a way that offends the Privileges and Immunities Clause. The Supreme Court, in *Baldwin, supra,* stated:

Elk hunting by nonresidents in Montana is a recreation and a sport. In itself ... it is costly and obviously available only to the wealthy nonresident or to one so taken with the sport that he sacrifices other values in order to indulge in it.... It is not a means to the nonresident's livelihood. The mastery of the animal and the trophy are the ends that are sought; appellants are not totally excluded from these. The elk supply, which has been entrusted to the care of the State by the people of Montana, is finite and must be carefully tended in order to be preserved.

Appellants' interest in sharing this limited resource on more equal terms with Montana residents simply does not fall within the purview of the Privileges and Immunities Clause. *Equality in access to Montana elk is not basic to the maintenance and well-being of the Union.*

436 U.S. at 388, 98 S.Ct. at 1862 (emphasis added).

Only with respect to those rights bearing upon the vitality of the nation as a whole must the state treat all citizens, resident and nonresident, equally. *Baldwin,* 436 U.S. at 383, 98 S.Ct. at 1860. Since elk hunting by nonresidents in Montana is not fundamental, I conclude that the statutory distinction complained of by plaintiff does not violate the Privileges and Immunities Clause. Therefore, plaintiff has no likelihood of success on the merits with respect to this claim.

■ *Equal Protection Clause.* Again, the recreational nature of the asserted right is significant. Because the opportunity to hunt elk in Montana for sport is not fundamental, the Court need not strictly scrutinize the disparity. Rather, my inquiry is limited to determining whether Montana's hunting license system bears some rational relationship to a legitimate state purpose. *See, e.g., Hughes v. Alexandria Scrap Corporation,* 426 U.S. 794, 812–14, 96 S.Ct. 2488, 2499–2500, 49 L.Ed.2d 220 (1976).

The purpose to be served by Montana's hunting license system is the conservation of wildlife. It is the special interest of Montana's citizens in the state's elk herds

that is at the root of the statutory distinction between resident and nonresident hunters. Montana is not prohibited from preferring its residents over nonresidents in allocating access to recreational hunting opportunities. *See Montana Outfitters Action Group*, 417 F.Supp. at 1010. There is no irrationality in Montana's legislative decision to utilize limitation of the number of nonresident big-game hunters as an effective game management tool.

For those who live here, Montana is more a state of mind and a way of life than it is simply a geographic place to hang your hat. Yet, Montana residency generally entails substantial economic sacrifice because of the disparity in both quality and quantity of gainful employment here compared with more populated areas. Residents generally accept this sacrifice gladly for the privilege of enjoying the amenities available in Montana—including the ability to receive a license to hunt elk, as well as a voice in determining how Montana's elk are managed and harvested.

Another rational basis for the statutory distinction is the sacrifice which Montana residents have apparently made in foregoing development in order to preserve wildlife habitat, clean air, and water. Without that sacrifice, survival of the elk herds would be jeopardized. The right asserted by plaintiff depends in large part on the sacrifice made by residents to preserve the opportunity to hunt. Nonresidents do not share in that lost economic opportunity or expense.

Plaintiff's reliance on *Terk v. Gordon*, No. 74–387–M, (D.N.M.1977), is misplaced. In *Terk*, a three-judge district court upheld New Mexico's hunting license scheme insofar as it imposed higher license fees on nonresidents, but ruled unconstitutional the statutory provisions granting preference to residents in the allocation of licenses for certain rare species of game. The value of *Terk* is limited because the lower court decision was rendered before the Supreme Court's decision in *Baldwin*. Additionally, while *Terk* was affirmed by the Supreme

Court on direct appeal,[5] no review was sought on the allocation issue.

*Conclusion.* I hold that Montanans acting through their state government may—as they have done—discriminate in favor of resident Montanans in the licensing of elk hunting. This practice does not offend the United States Constitution. Accordingly, the federal courts have no business intruding into Montana's wildlife management program.

For the reasons stated above, and since it is doubtful plaintiff will prevail on the merits,

IT IS ORDERED that plaintiff's motion for preliminary injunctive relief is DENIED.

5. *Terk v. Gordon*, 436 U.S. 850, 98 S.Ct. 3063, 56 L.Ed.2d 751 (1978) (per curiam).