Peter SHEPHERD and Jim Bailey, Appellants and Cross-Appellees,

v.

STATE of Alaska, DEPARTMENT OF FISH AND GAME, and the Alaska Board of Game, Appellees and Cross-Appellants.

Nos. S-5668, S-5698.

Supreme Court of Alaska.

May 19, 1995.

Terrence H. Thorgaard, P.C., Fairbanks, for appellants and cross-appellees.

Robert C. Nauheim, Asst. Atty. Gen., Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellees and cross-appellants.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

MOORE, Chief Justice.

This case involves a challenge to the constitutionality of AS 16.05.255(d), which states that regulations adopted by the Alaska Board of Game (the Board) "must provide that ... the taking of moose, deer, elk, and caribou by residents for personal or family consumption has preference over taking by nonresidents." Pursuant to this statute, the Board adopted regulations restricting the hunting of moose by nonresidents in certain game management units. Two Alaska resident big game guides challenged the constitutionality of AS 16.05.255(d) and its related regulations under the state and federal constitutions. One of the guides, Peter Shepherd, now appeals the superior court's decision upholding these provisions. Shepherd also appeals the superior court's resolution of certain nonconstitutional aspects of the suit. Finally, both Shepherd and the State appeal the superior court's conclusion that neither side was a prevailing party for attorney's fees purposes. We affirm the superior court's decision in its entirety except on the issue of attorney's fees.

I. *FACTS AND PROCEEDINGS*

Peter Shepherd and Jim Bailey do business as big game hunting guides, catering principally to nonresident moose hunters. Shepherd operates primarily in Game Management Unit (GMU) 19B, while Bailey conducts a substantial amount of his guiding business in GMU 13. Both Shepherd and Bailey are Alaska residents.

At a three-day meeting in July 1990, the Board adopted a number of emergency regulations restricting the hunting of moose in certain GMUs, including units 13 and 19B. In particular, the Board closed GMU 13 to moose hunting by nonresidents and established a fifty-inch antler limitation on the taking of moose by nonresidents in GMU 19B.

According to the State, these changes were prompted by this court's holding in *McDowell v. State,* 785 P.2d 1 (Alaska 1989) (holding unconstitutional the rural resident preference provisions of Alaska's former subsistence law), and by depressed moose populations after the harsh winter of 1989–90. Anticipating increased subsistence hunting pressure on certain moose populations because the numbers of potential subsistence hunters had been increased as a consequence of *McDowell,* the Board concluded that these moose populations could not sustain the demand for moose by both residents and nonresidents.

The Board subsequently authorized the Commissioner of the Alaska Department of Fish and Game to make these emergency

regulations permanent. *See* AS 16.05.270 (providing that the Board may delegate its authority to adopt regulations to the Commissioner). In November 1990 the Commissioner exercised this delegated authority and adopted permanent regulations identical to the emergency regulations adopted by the Board in August 1990. At its spring 1991 meeting, the Board then adopted regulations substantially identical to those adopted by the Commissioner.[1]

In August 1990 Shepherd filed suit, challenging the validity of the emergency regulations.[2] He alleged that the regulations had been "automatically repealed" when the Board failed to publish notice of the regulations within ten days of their adoption as required under AS 44.62.250. Shepherd also alleged that the regulations "and the statutes upon which they are apparently based, AS 16.05.255(d) and AS 16.10.256," invidiously discriminated between Alaska residents and nonresidents and between the guides of residents and the guides of nonresidents, thereby violating, *inter alia,* the Privileges and Immunities Clause, the Commerce Clause, and the Equal Protection Clause of the United States Constitution. Shepherd and Bailey (the guides) later amended their complaint to include allegations that the regulations and statutes violated the Equal Protection and Equal Application Clauses of the Alaska Constitution.

After filing suit, the guides moved for a preliminary injunction prohibiting enforcement of the emergency regulations. The superior court denied the motion. Subsequently, the guides moved for partial summary judgment on their claim that the emergency regulations were improperly noticed and therefore automatically repealed under AS 44.62.250. The superior court granted this motion.

The guides then filed a second motion for partial summary judgment, requesting that the court declare that AS 16.05.255(d) violated the federal and state constitutions. The motion also requested that the court declare that the regulations in effect prior to the Board's July 1990 meeting were still in effect on the grounds that the permanent regulations had not been properly adopted. The State opposed the motion and filed a cross-motion for summary judgment dismissing the constitutional claims. The State also moved to strike the guides' arguments concerning the permanent regulations as being outside the scope of the guides' complaint. The court granted this latter motion. The guides immediately amended their complaint to encompass the new claim.

In June 1992 the superior court denied the guides' second motion for partial summary judgment and granted the State's cross-motion for summary judgment. Ruling from the bench, the court dismissed the Commerce Clause claim, finding that unharvested game is not an article of interstate commerce and that the statute's impact on the guides' interstate business was de minimus. The court also dismissed the guides' privileges and immunities challenge, finding that the guides had insufficient standing to assert the claim and that, in any event, the United States Supreme Court decision in *Baldwin v. Fish & Game Commission,* 436 U.S. 371, 98 S.Ct., 1852, 56 L.Ed.2d 354 (1978), was dispositive of the claim.

Applying minimal rational basis scrutiny, the court also dismissed the federal equal protection challenge. The court found that the statute's preference for personal and consumptive use over trophy use was a legitimate state goal. The court further concluded that the statute was rationally related to that goal. Finally, the court concluded that the statute did not violate Alaska's Equal Protection Clause. In so holding, the court applied the sliding scale of scrutiny set forth in *State v. Anthony,* 810 P.2d 155 (Alaska 1991).

Finally the court denied the guides' motion for summary judgment with respect to the permanent regulations adopted subsequent to the July 1990 meeting of the Board. The

1. In 1993 the Board reopened GMU 13 to nonresident moose hunters on the same basis as resident moose hunters. Regulations governing GMU 19B have remained unchanged. 5 Alaska Administrative Code (AAC) 85.045(11), (17) (1993).

2. Bailey joined in the suit shortly thereafter.

court ruled that the guides had presented no evidence to challenge the presumption of validity of the regulations. The court further noted that summary judgment was improper, since "the State would have an opportunity to fill in some of the missing facts as to notice public hearing [sic] and whether or not the commissioner's authority had expired."

The guides subsequently filed a third motion for partial summary judgment, alleging that the emergency regulations had never been validly re-adopted as permanent regulations. The State then filed its third cross-motion for summary judgment. In October 1992 the court granted the State's motion, finding that the guides had presented no evidence to overcome the presumption of validity.

The parties then entered into a stipulation, with the court's approval, dismissing with prejudice all of the guides' remaining claims. Both parties then moved for entry of final judgment, each requesting an award of attorney's fees. The court entered final judgment dismissing the guides' claims and denied both parties' requests for attorney's fees, finding that the guides were not public interest litigants and that neither side had prevailed. This appeal followed.

## II. *DISCUSSION*

### A. *Nonconstitutional Issues*

#### 1. *The State's motion to strike*

In their second motion for partial summary judgment, the guides argued that the superior court's decision invalidating the emergency regulations effectively revived the pre-July 1990 regulations governing GMUs 13 and 19 and that the permanent regulations later adopted by the Commissioner of Fish and Game and by the Board were procedurally invalid. On these grounds, the guides requested the court to declare that the pre-July 1990 regulations were still valid law.

The State opposed the motion and moved to strike the guides' arguments concerning the permanent regulations. The State argued that the guides had "failed to allege any facts or make any claim for relief in their complaint challenging the validity of the regulations adopted by the Department of Fish and Game in 1990 or by ... the Board during its Spring 1991 meeting." The court granted the State's motion, and the guides immediately amended their complaint to conform their pleadings to the new claim.

█ On appeal, Shepherd argues that the court erred in granting the motion to strike. He maintains that, by requiring that the complaint be amended, the court improperly brought into effect the statutory rebuttable presumption that all requirements for adoption had been satisfied. *See* AS 44.62.100. We disagree.

Alaska Statute 44.62.100(a) provides:

> The filing of a certified copy of a regulation ... by the lieutenant governor raises the rebuttable presumption[ ] that
>
> (1) it was duly adopted;
>
> (2) it was duly filed and made available for public inspection at the day and hour endorsed on it; [and]
>
> (3) all requirements of this chapter and the regulations relative to the regulation have been complied with....

As demonstrated by the State, the Lieutenant Governor filed a certified copy of these regulations on July 11, 1991. Thus, the statutory presumption was triggered regardless of the manner in which this issue was brought before the court.

█ In any case, the superior court's order striking the guides' challenge to the validity of the permanent regulations was a proper means of limiting the guides' arguments to the claims set forth in their original complaint. As the State notes in its brief, the guides immediately amended their complaint to encompass their new claim, they had an opportunity to brief the issue during the subsequent course of the litigation, and their third motion for summary judgment addressed the validity of the permanent regulations in depth. Thus, "the only effect of the order ... was to provide for an orderly consideration" of the issues presented to the court.

2. *The superior court's June 1992 order denying partial summary judgment to the guides*

In June 1992 the superior court issued an order stating that "[t]he plaintiffs' motion for partial summary judgment on the issue of the adequacy of the state's notice of the Board of Game's regulations is hereby denied." This order was in response to the following statement in the guides' second motion for summary judgment: "[The] notice that was published did not provide, as required by AS 44.62.200(a)(1) 'a statement of the time, place, and nature of proceedings for adoption ... of the regulation' by the commissioner."

The court set forth from the bench the basis for its order. The court found "nothing admissible in the record that would challenge the presumption of validity of those regulations." *See* AS 44.62.100. The court further stated that "the State would have an opportunity to fill in some of the missing facts as to notice.... So [the] motion ... for partial summary judgment's denied on that basis."

Shepherd contends that, by issuing this order, the court "ruled that the then-current regulations had been adequately noticed despite the fact that the issue had never been addressed and briefed by the parties." We disagree. While Shepherd is correct in noting that at that point in the litigation, little attention had been paid to the issue of notice with respect to the permanent regulations,[3] the court's order is properly interpreted only as a finding that the guides had not established their right to summary judgment on this issue.[4]

B. *Constitutional Issues*

Shepherd appeals the superior court's determination that AS 16.05.255(d), on its face and as implemented by the regulations discussed above, is consistent with the United States and Alaska Constitutions. Specifically, Shepherd asserts that the statute violates the Equal Protection Clause and the Uniform Application Clause of the Alaska Constitution and the Equal Protection Clause, the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution. This court exercises its independent judgment in reviewing constitutional questions. *Sonneman v. Knight,* 790 P.2d 702, 704 (Alaska 1990).

1. *Actual controversy*

As a threshold issue, the State asserts that Shepherd's constitutional challenge does not present an actual controversy appropriate for judicial determination. The superior court ruled that the guides had established the existence of a justiciable controversy under *Jefferson v. Asplund,* 458 P.2d 995 (Alaska 1969).[5] For the first time on appeal, the State argues that the regulations at issue were adopted to implement the subsistence priority set forth in AS 16.05.258 and that Shepherd had offered no evidence suggesting that the regulations were promulgated pursuant to AS 16.05.255(d).

The State's argument is inconsistent with the record and must be flatly rejected. The

3. Shepherd's assertion that the issue of notice had never been addressed by the parties is incorrect, as it is clear that the court's ruling was in response to the challenge (however brief) to the adequacy of notice set forth in the guides' second motion for summary judgment. Moreover, the court was correct in finding that the guides had offered no evidence in support of their assertion that notice was inadequate.

4. Indeed, the order did not foreclose the guides' opportunity to fully litigate the validity of the permanent regulations. The guides' third motion for partial summary judgment and the State's third cross-motion for summary judgment directly addressed the issue, the issue was resolved in favor of the State, and the guides do not appeal that decision.

5. *Asplund* provides:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

458 P.2d 995, 998–99 (Alaska 1969) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)).

record is replete with evidence that the regulations at issue were adopted pursuant to both AS 16.05.255 and AS 16.05.258. The State expressly argued to the superior court that AS 16.05.255(d) provided authority for the regulations at issue. In addition, in response to the Plaintiffs' First Set of Interrogatories, the State recognized that the disputed "action was based on ... statutory authority including AS 16.05.255(d)." Thus, we affirm the superior court's conclusion that an actual and justiciable controversy was presented regarding the constitutionality of AS 16.05.255(d).

2. *State ownership of naturally occurring fish and wildlife*

Although Shepherd has presented an array of constitutional arguments, they have a common theme. He contends that the State may not discriminate against nonresident recreational hunters because residency provides no basis for distinguishing trophy hunters from those who hunt for food:

> The challenged statute, AS 16.05.255(d) is not about subsistence. This is about Alaska hunters who do not qualify as "subsistence users," who do not at all need the meat they are harvesting, being accorded preferential treatment over non-Alaskans. Some non-residents, particularly non-residents in the lower grades of the military, actually are below the officially defined level of poverty. Some Alaskans, on the other hand, choose to hire guides. Do they do this with the primary purpose to put meat on the table? Or is obtaining meat just an incidental benefit? Even when they don't hire guides, Alaskans ... frequently can and do pay more for the expenses of their hunt than an equivalent amount of beef would cost in the supermarket. The essential value of hunting for most nonsubsistence hunters, whether resident or nonresident, is the pleasurable experience of the hunt.

The State responds that nonresident hunters primarily hunt to obtain trophies while resident hunters generally hunt for food. The evidence offered by both parties is anecdotal and suppositional. We have no need to draw any conclusions concerning this evidence because under the federal and state constitutions the state has a special interest in the fish and wildlife within its boundaries and is entitled to grant allocational preferences to state resident recreational users.

In *Montana Outfitters Action Group v. Fish & Game Commission,* 417 F.Supp. 1005 (D.Mont.1976), *aff'd sub nom., Baldwin v. Fish & Game Commission,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), a Montana resident big game guide and several out-of-state residents challenged the constitutionality of a Montana regulatory scheme restricting the nonresidents' rights to hunt elk. 417 F.Supp. at 1007. Under the regulatory scheme, nonresidents were required to pay from seven to twenty-five times as much to obtain a license to hunt elk. *Id.* The district court rejected the hunters' challenge, squarely holding that the state was entitled to give preferences to its residents with respect to recreational hunting.

> We conclude that where the opportunity to enjoy a recreational activity is created or supported by a state, where there is no nexus between the activity and any fundamental right, and where by its very nature the activity can be enjoyed by only a portion of those who would enjoy it, a state may prefer its residents over the residents of other states, or condition the enjoyment of the nonresidents upon such terms as it sees fit.

*Id.* at 1010.

On appeal, the United States Supreme Court affirmed the judgment of the district court. *Baldwin v. Fish & Game Comm'n,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). The Court noted that, traditionally, states owned or held in trust for their own citizens naturally occurring fish and wildlife and were not required to allow nonresidents to share in their harvest. *Id.* at 384–85, 98 S.Ct. at 1860–61; *see, e.g., Geer v. Connecticut,* 161 U.S. 519, 530, 16 S.Ct. 600, 604–05, 40 L.Ed. 793 (1896) (holding that a state may allow its citizens to enjoy the benefits of the property belonging to them in common "without at the same time permitting the citizens of other states to participate in that which they do not own"); *see also McCready v. Virginia,* 94 U.S. 391, 24 L.Ed. 248 (1877);

*Corfield v. Coryell*, 6 F.Cas. 546 (C.C.E.D.Pa. 1825) (No. 3,230). The Court went on to observe that, more recently, the power of states to prefer their own residents concerning the harvest of fish and game had been limited in cases where the asserted state power was in conflict with paramount federal interests. *Baldwin*, 436 U.S. at 385–86, 98 S.Ct. at 1861–62. In the absence of paramount federal interests, however, the traditional rule still obtains:

> Appellants contend that the doctrine on which *Corfield, McCready*, and *Geer* all relied has no remaining vitality. We do not agree.... The fact that the State's control over wildlife is not exclusive and absolute in the face of federal regulation and certain federally protected interests does not compel the conclusion that it is meaningless in their absence.
>
> We need look no further than decisions of this Court to know that this is so. It is true that in *Toomer v. Witsell* the Court in 1948 struck down a South Carolina statute requiring nonresidents of the State to pay a license fee of $2,500 for each commercial shrimp boat, and residents to pay a fee of only $25, and did so on the ground that the statute violated the Privileges and Immunities Clause. *Id.*, at 395–403, 68 S.Ct., at 1161–1165. *See also Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952), another commercial-livelihood case. Less than three years, however, after the decision in *Toomer*, so heavily relied upon by appellants here, the Court dismissed for the want of a substantial federal question an appeal from a decision of the Supreme Court of South Dakota holding that the *total* exclusion from that State of nonresident hunters of migratory waterfowl was justified by the State's assertion of a special interest in wildlife that qualified as a substantial reason for the discrimination. *State v. Kemp*, 73 S.D. 458, 44 N.W.2d 214 (1950), *appeal dismissed*, 340 U.S. 923, 71 S.Ct. 498, 95 L.Ed. 667 (1951). In that case South Dakota had proved that there was real danger that the flyways, breeding grounds, and nursery for ducks and geese would be subject to excessive hunting and possible destruction by nonresident hunters lured to the State by an abundance of pheasants. 73 S.D., at 464, 44, N.W.2d, at 217.

*Id.* at 386–87, 98 S.Ct. at 1862.

That the natural resources of the state belong to the state, which controls them as trustee for the people of the state, is explicit in the Alaska Constitution. Article VIII, section 2 provides:

> The legislature shall provide for the utilization, development, and conservation of *all natural resources belonging to the State*, including land and waters, *for the maximum benefit of its people.*

(Emphasis added.) Article VIII, section 3 provides:

> Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use.

And article VIII, section 4 provides:

> *Fish*, forests, *wildlife*, grasslands, and *all other replenishable resources belonging to the State* shall be utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses.

(Emphasis added.)

Similarly, this court has repeatedly observed that the state acts as "trustee" of the naturally occurring fish and wildlife in the state for the benefit of its citizens. *See, e.g., Gilbert v. State, Dep't of Fish & Game*, 803 P.2d 391, 399 (Alaska 1990) (observing that "migrating schools of fish, while in inland waters, are the property of the state, held in trust for the benefit of all the people of the state, and the obligation and authority to equitably and wisely regulate the harvest is that of the state") (quoting *Metlakatla Indian Community v. Egan*, 362 P.2d 901, 915 (Alaska 1961)); *Owsichek v. State, Guide Licensing & Control Bd.*, 763 P.2d 488, 495 (Alaska 1988) (noting that "the state acts 'as trustee of the natural resources for the benefit of its citizens' ").

■ The State of Alaska devotes substantial resources to the protection and management of fish and wildlife. As the trustee of those resources for the people of the state, the state is required to maximize for state residents the benefits of state resources. In

cases of scarcity, this can often reasonably be accomplished by excluding or limiting the participation of nonresidents. In such circumstances, the state may, and arguably is required to, prefer state residents to nonresidents, except when such preferences are in conflict with paramount federal interests.

3. *Federal constitutional issues*

a. *Privileges and immunities*

Shepherd challenged AS 16.05.255(d) under the Privileges and Immunities Clause of the federal constitution. U.S. Const., art. IV, § 2. The superior court dismissed this claim on two grounds. First, the court found that Shepherd had not established standing. The court further found that, assuming standing had been established, the United States Supreme Court's decision in *Baldwin* disposed of Shepherd's claim. We affirm the superior court in both respects.

It is now settled law that in-state residents lack standing to challenge a state statute or municipal ordinance under the Privileges and Immunities Clause. *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden,* 465 U.S. 208, 217–18, 104 S.Ct. 1020, 1027–28, 79 L.Ed.2d 249 (1984); *J.F. Shea Co. v. City of Chicago,* 992 F.2d 745, 749 (7th Cir.1993). Moreover, the United States Supreme Court in *Baldwin* squarely held that recreational hunting is not an activity protected under the Privileges and Immunities Clause of the federal constitution. 436 U.S. at 379–88, 98 S.Ct. at 1858–63. As *Baldwin* is legally indistinguishable from the present case, no further discussion on this point is required.

b. *Commerce Clause*

The Commerce Clause of the United States Constitution grants to Congress the power to "regulate commerce ... among the several states." U.S. Const. art. I, § 8. In addition to granting regulatory power to Congress, the Commerce Clause also restricts the power of the states to erect barriers to interstate commerce. *See, e.g., Maine v. Taylor,* 477 U.S. 131, 137, 106 S.Ct. 2440, 2446–47, 91 L.Ed.2d 110 (1986).

The superior court dismissed the guides' Commerce Clause claim, concluding that "unharvested game is not an article of interstate commerce."[6] The court further explained that "the only arguable impact on interstate commerce comes from the guide's [sic] business.... To the extent that that's an infringement on interstate commerce I find it to be de minimus and not addressable." On appeal, Shepherd argues that the statute facially discriminates against interstate commerce, in that a guide may be permitted to offer a specific guided hunt to a resident, but be prohibited from offering the very same hunt to a nonresident.

Shepherd's argument that AS 16.05.255(d) facially discriminates against interstate commerce mischaracterizes the effect of the statute. The statute and regulations promulgated thereunder do not regulate professional guiding, but the taking of wild game. As the State notes in its brief, this is "an activity that does not involve articles of interstate commerce or any commodity or service destined to become so."

Several United States Supreme Court cases have suggested that unharvested game is not an article of interstate commerce. For example, in *Toomer v. Witsell,* a case involving a Commerce Clause challenge to a state tax on commercial shrimp fishing, the Court stated that "the taxable event, the taking of shrimp, occurs *before the shrimp can be said to have entered the flow of interstate com-*

6. The superior court apparently found that the guides had standing to raise the Commerce Clause issue. Although this issue was not fully briefed on appeal, the State asserts in a footnote that "it is extremely doubtful that the guides have standing to assert the federal constitutional rights alleged to be violated by AS 16.05.255(d)." Emphasizing that this statute does not discriminate against professional guides, the State argues that even if the type of economic injury suffered by the guides is sufficient to confer interest-injury standing under state law, *see State, Dep't of Transp. v. Enserch Alaska Constr., Inc.,* 787 P.2d 624, 630 (Alaska 1989), it is not sufficient to confer interest-injury standing under federal law. Because we hold that Shepherd's Commerce Clause claim fails on the merits, we will not address the federal standing issue framed by the State. *See Wirum & Cash Architects v. Cash,* 837 P.2d 692, 713–14 (Alaska 1992) (this court may decline to address an issue which is inadequately briefed on appeal).

*merce.*" 334 U.S. 385, 394–95, 68 S.Ct. 1156, 1161, 92 L.Ed. 1460 (1948) (emphasis added). Likewise, in *Hughes v. Oklahoma,* the Court stated that "[w]hen any animal ... is lawfully killed for the purposes of food or other uses of man, it *becomes* an article of commerce." 441 U.S. 322, 329, 99 S.Ct. 1727, 1732, 60 L.Ed.2d 250 (1979) (adopting view of dissent in *Geer v. Connecticut,* 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896)) (emphasis added).

Several lower federal courts have expressly found that unharvested game is not an article of commerce for Dormant Commerce Clause purposes. In *Terk v. Ruch,* 655 F.Supp. 205 (D.Colo.1987), a case involving a statutory preference to state residents over nonresidents in the hunting of bighorn sheep and mountain goats, the court dismissed the plaintiffs' Commerce Clause claim, holding that wild sheep and goats were not articles of commerce. *Id.* at 215. Similarly, in *Tangier Sound Watermen's Ass'n v. Douglas,* 541 F.Supp. 1287, 1306 (E.D.Va.1982), the court stated that "[p]laintiffs have not established that unharvested crabs are articles of commerce." Thus, the court was "not convinced that the Commerce clause reaches a [Virginia] law whose effect is to prohibit a nonresident commercial crabber from catching crabs in Virginia." *Id.* at 1306.

That unharvested game is not an article of commerce is particularly clear where the game, after its taking, is still not destined for interstate commerce. *See Hicklin v. Orbeck,* 437 U.S. 518, 533, 98 S.Ct. 2482, 2491, 57 L.Ed.2d 397 (1978) (Commerce Clause circumscribes a State's ability to prefer its own citizens in the utilization of "natural resources ... *destined for interstate commerce* ") (emphasis added); *Terk,* 655 F.Supp. at 215 (noting that, under Colorado law, it is illegal to sell wild game and sheep). In Alaska, the sale or purchase of moose is prohibited. AS 16.05.920(a) (unless permitted by statute or regulation, a person shall not "take, possess, transport, sell, offer to sell, purchase, or offer to purchase ... game ... or any part of ... game"). We therefore affirm the superior court's conclusion that unharvested game is not an article of commerce.

In *Maine v. Taylor,* the Supreme Court set forth the analysis to be used in addressing Dormant Commerce Clause claims:

> [T]his Court has distinguished between state statutes that burden interstate transactions only incidentally, and those that affirmatively discriminate against such transactions. While statutes in the first group violate the Commerce Clause only if the burdens they impose on interstate trade are "clearly excessive in relation to the putative local benefits," statutes in the second group are subject to more demanding scrutiny.... [O]nce a state law is shown to discriminate against interstate commerce "either on its face or in practical effect," the burden falls on the State to demonstrate both that the statute "serves a legitimate local purpose," and that this purpose could not be served as well by available nondiscriminatory means.

477 U.S. at 138, 106 S.Ct. at 2447 (citations omitted); *see also Clajon Prod. Corp. v. Petera,* 854 F.Supp. 843, 858 (D.Wyo.1994) (if effects of regulation on interstate commerce are only incidental, regulation is presumptively valid).

As discussed above, the statute and regulations at issue regulate only the taking of wild game, which does not affirmatively discriminate against interstate commerce. The effect of these provisions on Shepherd's business as a guide is only an incidental effect of an otherwise valid regulation. Thus, AS 16.05.255(d) violates the Commerce Clause only if the burdens imposed on interstate commerce are "clearly excessive in relation to the putative local benefits" of the statute. *See Clajon Prod. Corp.,* 854 F.Supp. at 858–59 (state licensing scheme which granted a preference to resident hunters over nonresident hunters was not facially discriminatory for Dormant Commerce Clause purposes).

In *Pike v. Bruce Church,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), the Supreme Court discussed the "clearly excessive" test.

> If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of

the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Id.* at 142, 90 S.Ct. at 847.

In the present case, the State asserts that the resident preference serves the purpose of conserving scarce wildlife resources for Alaska residents. This unquestionably represents a legitimate state interest. *See Taylor,* 477 U.S. at 151, 106 S.Ct. at 2454 (a state "retains broad regulatory authority to protect the health and safety of its citizens and the integrity of its natural resources"); *Commercial Fisheries Entry Comm'n v. Apokedak,* 606 P.2d 1255, 1265 (Alaska 1980) (conservation of wildlife is legitimate purpose).

The State also presented evidence of increased demand upon wildlife resources, both by resident and nonresident hunters. In addition, the State also notes that, as a result of the harsh winter of 1989–90, moose populations in the relevant units were depressed prior to the adoption of the regulations at issue. Moreover, as the trial court noted, the burden placed on interstate commerce by the regulation restricting nonresident moose hunting in certain GMUs is de minimus. Thus, we affirm the superior court's dismissal of Shepherd's Commerce Clause claim.[7]

c. *Federal equal protection*

Shepherd appeals the superior court's determination that AS 16.05.255(d) does not violate the Equal Protection Clause of the Fourteenth Amendment.[8] Applying rational basis scrutiny, the superior court concluded that the preference of personal and family consumptive uses by residents over trophy use by nonresidents constituted a legitimate state purpose.[9] The court further found that the classification scheme set forth in the statute and regulations bore a rational relationship to that goal.

In our view, the fact that the moose populations in the GMUs at issue are insufficient to tolerate unlimited recreational hunting by both resident and nonresident recreational hunters, taken together with the state's interest as trustee of its wildlife for the benefit of state residents, justifies the restriction. As the district court stated in *DeMasters v. Montana,* 656 F.Supp. 21 (D.Mont.1986):

> It is the special interest of Montana's citizens in the state's elk herds that is at the root of the statutory distinction between resident and nonresident hunters. Montana is not prohibited from preferring its residents over nonresidents in allocating access to recreational hunting opportunities. There is no irrationality in Montana's legislative decision to utilize limitation of the number of nonresident big-game hunters as an effective game management tool.

*Id.* at 24–25 (citations omitted).

4. *Alaska constitutional issues*

Shepherd contends that AS 16.05.255(d) violates the Equal Rights and Opportunities Clause of the Alaska Constitution.[10] He also argues that the statute violates the Uniform Application Clause of the Alaska Constitution.[11] Both of these contentions lack merit for the same reason. Alaska residents and nonresidents are not similarly situated with respect to their rights of access

7. In his reply brief, Shepherd asserts that the Commerce Clause is implicated not so much "by the interstate shipment of moose meat, but by the interstate transportation of hunters to and from Alaska." This is likewise only an incidental effect on interstate commerce, subject to the same analysis and result set forth above.

8. The Equal Protection Clause of the Fourteenth Amendment provides: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIC, § 1.

9. The superior court concluded that the guides had standing to raise a federal equal protection claim. As noted in footnote 6, *supra,* we do not address the federal standing issue.

10. The Equal Rights and Opportunities Clause of the Alaska Constitution provides, in part: "All persons are equal and entitled to equal rights, opportunities and protection under the law." Alaska Const. art. I, § 1.

11. The Uniform Application Clause provides: "Law and regulations governing the use or disposal of natural resources shall apply equally to all persons similarly situated with reference to the subject matter and purpose to be served by the law or regulation." Alaska Const. art. VIII, § 17.

as recreational users to the fish and game of Alaska.

The Equal Rights and Opportunities Clause of the Alaska Constitution requires equal treatment only for those who are similarly situated. *See Alaska Pacific Assurance Co. v. Brown,* 687 P.2d 264, 271 (Alaska 1984) (right to equal treatment of those similarly situated is general principle underlying Alaska's Equal Rights and Opportunities Clause); *Ketchikan Gateway Borough v. Breed,* 639 P.2d 995, 995 (Alaska 1981) ("[e]qual protection requires that those similarly situated be treated equally").

Likewise, the Uniform Application Clause explicitly requires equal treatment only of persons "similarly situated with reference to the subject matter and purpose to be served by the law or regulation." Alaska Const. art. VIII, § 17; *see Gilbert v. State, Dep't of Fish & Game,* 803 P.2d 391, 398–99 (Alaska 1990) (Uniform Application Clause does not apply to two different groups of fishermen who participated in two different fisheries).

Resident and nonresident recreational users of Alaska fish and game are not similarly situated.[12] As noted above, subsection B.2., the state owns these resources and is required to manage them as trustee for the benefit of its citizens. The preference for Alaska residents with respect to natural resources is explicit in the state constitution and serves to differentiate resident from nonresident user groups.

C. *Attorney's Fees*

Both Shepherd and the State appeal the superior court's finding that neither party prevailed for attorney's fees purposes. Designation of the prevailing party "is committed to the broad discretion of the trial court." *Apex Control Sys., Inc. v. Alaska Mechanical, Inc.,* 776 P.2d 310, 314 (Alaska 1989). This court will not interfere with the trial court's determination of prevailing party status unless it is an abuse of discretion or "manifestly unreasonable." *Hillman v. Nationwide Mut. Fire Ins.,* 855 P.2d 1321, 1326 (Alaska 1993); *Tobeluk v. Lind,* 589 P.2d 873, 879 (Alaska 1979).

We have repeatedly held that a prevailing party is the party "who has successfully prosecuted or defended against the action, the one who is successful on the 'main issue' of the action and in 'whose favor the decision or verdict is rendered and the judgment entered.'" *Adoption of V.M.C.,* 528 P.2d 788, 795 n. 14 (Alaska 1974) (citations omitted). Where each party prevails on a "main issue," the court retains the discretion not to award any fees and costs. *Tobeluk,* 589 P.2d at 877.

In this case, both parties argue that they prevailed on the main issue of the case. Shepherd asserts that he successfully established that the emergency regulations adopted by the Board in July 1990 were improperly noticed and therefore "automatically repealed" under AS 44.62.250. The State asserts that it successfully established the constitutional and procedural validity of the permanent regulations. The trial court dismissed both parties' motions for attorney's fees, apparently finding that each party had prevailed on a "main issue." We disagree.

Taking the litigation as a whole, we believe that it is "manifestly unreasonable" to characterize the procedural validity of the emergency regulations as a main issue of this case. Shortly after the emergency regulations were adopted and before the guides filed their original complaint, the Board delegated authority to the Commissioner of the Alaska Department of Fish and Game to make these emergency regulations permanent. Both the Commissioner and the Board subsequently adopted permanent regulations substantially identical to the emergency regulations. The procedural validity of the emergency regulations is only peripheral to the central issue litigated by the parties—the constitutionality of AS 16.05.255(d). *Cf. De*

12. Concluding that two classes are not similarly situated necessarily implies that the different legal treatment of the two classes is justified by the differences between the two classes. Such a conclusion reflects in shorthand the analysis traditionally used in our equal protection jurisprudence. *See, e.g., Gonzales v. Safeway Stores, Inc.,* 882 P.2d 389 (Alaska 1994); *State v. Anthony,* 810 P.2d 155 (Alaska 1991). We have generally used this abbreviated analysis only in clear cases, of which this is one.

*Witt v. Liberty Leasing Co.,* 499 P.2d 599, 601 (Alaska 1972) (reversing trial court's determination that neither party was the prevailing party where one party received a $17,736.11 judgment offset by a $93.64 judgment in favor of the other party). We therefore reverse the superior court's determination that the State was not the prevailing party.

Shepherd also argues that the court erred in concluding that he was not a public interest litigant. As a public interest litigant, Shepherd would be immune from a fee award in favor of the State. *See, e.g., Anchorage v. McCabe,* 568 P.2d 986, 989, 993–94 (Alaska 1977). A trial court's finding as to a litigant's public interest status is reviewed under the abuse of discretion standard. *Citizens Coalition v. McAlpine,* 810 P.2d 162, 171 (Alaska 1991); *Anchorage Daily News v. Anchorage Sch. Dist.,* 803 P.2d 402, 404 n. 2 (Alaska 1990).

In *Anchorage Daily News,* this court set forth the criteria that a litigant must satisfy to be deemed a public interest litigant:

> (1) Is the case designed to effectuate strong public policies?
>
> (2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?
>
> (3) Can only a private party have been expected to bring the suit?
>
> (4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance?

803 P.2d at 404. A party must satisfy all four criteria to qualify as a public interest litigant. *McAlpine,* 810 P.2d at 171.

In the present case, Shepherd arguably meets the first three requirements. However, Shepherd cannot satisfy the fourth requirement. As a big game guide who admittedly does a "substantial portion of his business ... guiding ... nonresident moose hunters within Game Management Unit 19B," Shepherd was primarily motivated to litigate by concerns for his own economic livelihood. Thus Shepherd is not entitled to public interest litigant status. *See Anchorage Daily News,* 803 P.2d at 404; *Sisters of Providence, Inc. v. Department of Health & Social Servs.,* 648 P.2d 970, 980 (Alaska 1982).

## III. *CONCLUSION*

Based on the above analysis, we affirm the superior court's handling of this case in its entirety except on the issue of attorney's fees. The court did not err in requiring the guides to amend their complaint to encompass regulations other than the original emergency regulations, nor did the court err in denying summary judgment to the guides on the issue of notice of the permanent regulations.

The court was also correct in finding for the State on the guides' constitutional claims. Shepherd does not have standing, as an Alaska resident, to challenge AS 16.05.255(d) under the federal Privileges and Immunities Clause. Moreover, the United States Supreme Court's decision in *Baldwin* is dispositive of his privileges and immunities claim. Shepherd's Commerce Clause claim also fails, since unharvested game is not an article of interstate commerce and the restriction on his right to guide nonresident hunters is a permissible incidental effect of the regulation. Shepherd's equal protection claims also fail. Resident and nonresident hunters, and their guides, are not similarly situated with respect to access to Alaska's wildlife resources.

Finally, although the court did not abuse its discretion in determining that the guides were not public interest litigants, we hold that the court erred in finding that the State was not the prevailing party.

AFFIRMED, in part, REVERSED, in part, and REMANDED.

RABINOWITZ, Justice, concurring.

I disagree with the court's analysis of Shepherd's equal protection claim under Alaska's constitution. In analyzing Shepherd's claim, the court states that Alaska's equal protection clause "requires equal treatment only for those who are similarly situated." The court then concludes that "[r]esident and nonresident recreational users of Alaska fish and game are not similarly situated." In footnote 12, the court explains as follows: "Concluding that two classes are not similarly situated necessarily implies that the

different legal treatment of the two classes is justified by the differences between the two classes."[1] Thus, the court disposes of Shepherd's claim without applying the sliding scale test.[2] In my view, we should apply the sliding scale test and determine "whether a legitimate reason for disparate treatment exists, and, given a legitimate reason, whether the enactment bears a fair and substantial relationship to that reason."[3] *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994).

We have previously disposed of claims under the Alaska equal protection clause after determining that two groups are not similarly situated without explicitly applying the sliding scale test.[4] However, in my view, simply determining that residents and nonresidents are not similarly situated inadequately analyzes the issue in this case under our equal protection clause. Such a determination simply begs the question of whether the classification itself is reasonable and whether it justifies disparate treatment.

Professor Laurence Tribe notes that under federal equal protection jurisprudence, the Supreme Court has virtually always considered the reasonableness of legislative and administrative classifications. Laurence H. Tribe, *American Constitutional Law* § 16–1, at 1438 (2d ed. 1988). To this effect, he states as follows:

> The Court's original conception of the "reasonableness" required, however, was very limited: no regulatory provision was repugnant to equal protection as long as it "place[d] under the same restrictions, and subject[ed] to like penalties and burdens, all who ... [were] embraced by its prohibi-

1. While I agree that there may be cases in which the classes at issue are so obviously different that the "implied analysis" suggested by the court is appropriate, I do not agree that it is appropriate for the classification in this case between residents and nonresidents.

   I note that in *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264 (Alaska 1984), a case cited by the majority, we applied our sliding scale test to a classification contained in the Workers' Compensation Act which differentiated between residents and nonresidents for purposes of determining the amount of workers' compensation benefits. *Id.* at 269–74. This court concluded that the classification was unconstitutional. *Id.* at 274.

2. In analyzing equal protection issues under the Alaska Constitution, this court applies a three-step sliding scale test:

   > First, it must be determined ... what weight should be afforded the constitutional interest impaired by the challenged enactment. The nature of this interest is the most important variable in fixing the appropriate level of review....
   >
   > Second, an examination must be undertaken of the purposes served by the challenged statute. Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.
   >
   > Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.... At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate. At the higher end of the scale, the fit between the means and ends must be much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.

   *State v. Anthony*, 810 P.2d 155, 157 (Alaska 1991) (quoting *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 269–70 (Alaska 1984)).

3. The constitutional right to equal protection requires that state and local governments treat those who are similarly situated alike. *Gonzales*, 882 P.2d at 396. In considering equal protection cases a court must determine whether two groups of people who are treated differently are similarly situated and thus entitled to equal treatment. *Id.* To this effect, at the low end of the scale this court reviews legislatively created classifications "by asking whether a legitimate reason for disparate treatment exists, and, given a legitimate reason, whether the enactment bears a fair and substantial relationship to that reason." *Id.*

4. In *Smith v. State*, 872 P.2d 1218 (Alaska 1994), this court disposed of an equal protection claim based upon its conclusion that discretionary and mandatory parolees are not similarly situated for purposes of receiving an in-person hearing to determine their eligibility for release. *Id.* at 1226–27. In *Moore v. Beirne*, 714 P.2d 1284 (Alaska 1986), this court concluded that applicants for adult public assistance who have been found eligible to receive interim assistance and applicants who have been found to be disabled are not similarly situated for purposes of setting the amount of assistance. *Id.* at 1287. And in *Ketchikan Gateway Borough, Alaska v. Breed*, 639 P.2d 995 (Alaska 1981), this court determined that those who dock a light plane at a seaplane float and those who land at the Ketchikan International Airport are not similarly situated for purposes of requiring landing fees. *Id.* at 996.

tions; thus recognizing and preserving the principle of equality among those engaged in the same [regulated activities.]" But this narrow view of nondiscriminatory application within the established class was soon discarded as empty of content, since persons or activities treated differently by government could for that very reason be deemed not "the same." Unaccompanied by any independent measure of when persons or acts were inherently equivalent, the original test afforded virtually no scope for review. To provide content, equal protection came to be seen as requiring "some rationality in the nature of the class singled out," with "rationality" tested by the classification's ability to serve the purposes intended by the legislative or administrative rule: "The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose...."

*Id.* at § 16–1, at 1439–40 (footnotes omitted) (quoting *Powell v. Pennsylvania,* 127 U.S. 678, 687, 8 S.Ct. 992, 997, 32 L.Ed. 253 (1888); *Rinaldi v. Yeager,* 384 U.S. 305, 308–09, 86 S.Ct. 1497, 1499–1500, 16 L.Ed.2d 577 (1966); *McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964)). Thus, under federal equal protection analysis, a court considers the reasonableness of legislative and administrative classifications even when the court determines that two groups are not similarly situated.[5] The requirement that a court consider the reasonableness of classifications is even more compelling under Alaska's equal protection clause which has been construed by this court to provide greater protection of individual rights than its federal counterpart. *State v. Anthony,* 810 P.2d 155, 157 (Alaska 1991).

Applying our sliding scale equal protection analysis to the facts appearing in this record, I conclude that there is no equal protection violation and therefore concur with the majority's result. The individual interest impaired is the right of nonresidents to hunt moose in Alaska. This interest is subject to minimal scrutiny. The articulated purpose of the enactment is to conserve the State's wildlife resources for Alaska residents to use as food. This purpose is supported by several provisions of the Alaska Constitution. Alaska Const. art. VIII, §§ 2, 3 & 4. Finally, the State's purpose must bear a fair and substantial relationship to the State's means of furthering that purpose. Based on the relevant provisions of the Alaska Constitution, the distinction drawn between residents and nonresidents in AS 16.05.255(d) bears a fair and substantial relationship to the State's purpose of conserving wildlife resources for Alaska residents to use as food. Thus, after engaging in the appropriate constitutional analysis, I conclude that AS 16.05.255(d) is valid under the equal protection clause of Alaska's constitution.

5. For example, in *Schweiker v. Hogan,* 457 U.S. 569, 588–93, 102 S.Ct. 2597, 2609–11, 73 L.Ed.2d 227 (1982), *Michael M. v. Sonoma County Superior Court,* 450 U.S. 464, 472–73, 101 S.Ct. 1200, 1205–06, 67 L.Ed.2d 437 (1981), and *Dobbert v. Florida,* 432 U.S. 282, 301, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977), the Supreme Court concluded that the classes at issue were not similarly situated but then went on to determine whether the classifications pass constitutional muster under the appropriate federal level of scrutiny.